615 F.2d 628
 104 L.R.R.M. (BNA) 2109
 Gerald HASTINGS and North East Federation of Teachers, Local
No. 3410, AFL-CIO, Plaintiffs-Appellants,
v.
NORTH EAST INDEPENDENT SCHOOL DISTRICT, Board of Trustees of
North East Independent School District and Ivan
Fitzwater, Defendants-Appellees.
 No. 77-3499.
 United States Court of Appeals,
Fifth Circuit.
 April 14, 1980.
 
 Larry Watts, Houston, Tex., for plaintiffs-appellants.
 Foster, Lewis, Langley, Gardner & Banack, Inc., Emerson Banack, Jr., William T. Armstrong, III, San Antonio, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before VANCE, POLITZ and RANDALL, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 The district court imposed the ultimate sanction authorized by Rule 37, Fed.R.Civ.P., and dismissed the suit of plaintiffs-appellants for their failure to comply with a discovery order. In addition the court awarded appellees $1,000 in attorney's fees. We reverse and remand.
 
 
 2
 On June 10, 1976, the Northeast Federation of Teachers, Local No. 3410, American Federation of Teachers, AFL-CIO, (NFT) and its president, Gerald Hastings, filed a complaint contending that the defendants-appellees, the North East Independent School District, its Trustees and Superintendent (collectively the "Board") were denying NFT privileges which were being accorded the Northeast Teachers Association (NTA), a rival teacher's organization. The complaint alleges that NTA was permitted free use of the intra-district "pony" mail system and unfettered use of faculty mail boxes and bulletin boards. In addition, according to the complaint, NTA representatives were allowed to solicit membership, distribute materials, and conduct meetings on school premises during school hours. NFT was denied these and other opportunities or privileges. NFT asserts that the actions of defendants constitute violations of the First and Fourteenth Amendments, abrogating complainants' free speech, due process and equal protection rights. The complaint seeks declaratory and injunctive relief, money damages and attorney's fees. Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343. The action was brought under 42 U.S.C. § 1983.
 
 
 3
 Our review and analysis of the sequence of events in the record inexorably leads to the conclusion that the district court abused its discretion in imposing sanctions. A summarization is in order.
 
 
 4
 On July 9, 1976, defendants filed a Motion for More Definite Statement, Motion to Dismiss and Answer. On July 12, 1976, the District Court entered its Order Preliminary to Pre-trial Conference, directing, amongst other things, the completion of discovery within four months.
 
 
 5
 On August 25, 1976, the court ordered plaintiffs to file an application for class certification under Rule 23, Fed.R.Civ.P., within 30 days. In the complaint plaintiffs had requested class action consideration. On that same day the court denied the Motion to Dismiss on a finding the complaint was "not totally unmeritorious" and presented "a genuine issue of material fact." Continuing, the court dismissed the school district and the trustees as a body, finding that they were not "persons" within the meaning of § 1983, and granted the Motion for More Definite Statement, detailing the specifics required.
 
 
 6
 On September 29, 1976, defendants moved for dismissal of the class action because plaintiffs had failed to file the application within 30 days. On October 5, 1976, appellants submitted the application. Finding no prejudice, the court allowed the application and an amended complaint.
 
 
 7
 On October 1, 1976, counsel for the Board had noticed the taking of the depositions of Hastings, Steven Jennings, NFT secretary, Claude Perry, NFT vice-president, and Thelma Marschalar, NFT treasurer. He also noticed the deposition of Mrs. Frances Evans, president of NTA. The NFT officers were directed to produce the following:
 
 
 8
 (a) Constitution, Charter, By-Laws, Minute Books of Northeast Federation of Teachers Local No. 3410, AFL-CIO;
 
 
 9
 (b) Any and all records, documents, instruments, memorandums, membership lists, membership roll, records by which current dues of members may be determined, correspondence, dues rolls, indicating or setting forth in any manner whatsoever, the identity of members of Northeast Federation of Teachers, Local No. 3410, AFL-CIO, for the school years 1974-1975; 1975-1976; 1976-1977;
 
 
 10
 (c) Copies of any and all flyers, hand-outs, handbills, publications of any type, intended for distribution by or on behalf of Northeast Federation of Teachers, Local No. 3410, AFL-CIO, to any teacher in Northeast Independent School District during the school years 1974-1975; 1975-1976; 1976-1977;
 
 
 11
 (d) Copies of any and all correspondence to and from officials and administrators of Northeast Independent School District and any representative or officer of Northeast Federation of Teachers.
 
 
 12
 The notice to Mrs. Evans directed that she produce documents reflecting only the number of members of her association and the number of teachers in the district for the school years 1974-75 to 1976-77. No individual names or records were sought.
 
 
 13
 On October 15, 1976, the named deponents gave oral depositions. All declined to reveal the names of NFT members, the author of the NFT constitution and the number of members voting in the last NFT election. All refused to produce minutes of the various NFT meetings and the union's financial records. In response the Board filed a Motion to Compel Discovery, assigning no reason why the requested information was necessary.
 
 
 14
 In their Answer to Motion to Compel Discovery, appellants asserted that disclosure of NFT membership lists would violate their constitutional right of association. However, appellants attached to this pleading copies of the minutes of the union meetings and financial records of the union. They also set out the name of the author of the NFT's constitution.
 
 
 15
 The Board next filed a pleading in which it specified its reasons for seeking the names of the NFT members. In essence the Board stated it needed the membership list to determine the validity of plaintiffs' claims to a loss of dues and stifled growth. Further, the Board claimed the information was necessary for defendants' rebuttal of the allegations of harassment and intimidation and, further, that the number of NFT members was "relevant in showing the correctness of Defendants in refusing to grant Plaintiffs the privilege requested by Plaintiff Union."
 
 
 16
 With the ball returned to its court NFT filed a trial brief advancing arguments and citing authorities for its assertions of constitutional abrogations. One week later, on March 22, 1977, the district court entered an Order Compelling Answers. This is the underlying order in this case. It first commanded Hastings to name the person who wrote the constitution. As noted above, in a pleading filed seven weeks before Hastings had named that person. The order then directed Hastings to reveal the names of the members of the union listed in the Northeast directory. The order commanded Steven Jennings to state the number of members voting in the last union election and to deliver copies of minutes of NFT meetings. Copies of these minutes had been filed in the record of the case seven weeks before. The order also commanded Thelma Marschalar to reveal the names of the members in the Northeast directory. It further commanded her to produce the dues records, dues receipt books and income tax file of the union. Once again, as noted, seven weeks before copies of the financial records of NFT, numbering 131 pages, had been filed in the record.
 
 
 17
 On April 14, 1977, appellants filed a motion for reconsideration of the order of March 22, 1977. They also moved to dismiss their claim for monetary damages. Although appellants continued to resist disclosure of the names of all of their members, they did comply with all other parts of the order. They set out the previous identification of the author of the union's constitution, and reminded that the tax returns, financial records and minutes of union meetings were in the case record and copies had been furnished counsel for defendants, and, further, they stated that the names of members as found in the Northeast directory had been revealed. They agreed to specify the number of members voting in the last union election. In fact, appellants furnished everything except the names of some of their members. However, in that regard, appellants declared that their claims of harassment and intimidation would be limited to allegations involving the score or so members whose names had been given.
 
 
 18
 The Board continued to press its demand for disclosure of the names of all members of the union, and on April 27, 1977, filed a motion seeking dismissal of the suit for failure of compliance with the order of March 22, 1977. Appellants again briefed the constitutional issues and enunciated the factual and legal basis upon which they believed they should be relieved of the order to disclose the names of all of their members.
 
 
 19
 On May 11, 1977, the district court granted plaintiffs' motion for non-suit as to the monetary damages claim. It denied the motion for reconsideration of the order of March 22, 1977, and ordered that on or before May 17, 1977, the plaintiffs were to submit to examination, at a time designated by counsel for defendants, and answer questions divulging the names of all union members.
 
 
 20
 On May 17, 1977, the depositions of Hastings and the other union officers were taken. Hastings gave the names of the teachers who had consented to being identified as union members. He refused to identify any member who had not authorized release of his or her name. The other union officers either did not know the names of any members other than those listed or honored their request for anonymity.
 
 
 21
 On May 19, 1977, defendants filed a motion for sanctions. This motion was granted by the court on October 14, 1977. Plaintiffs' suit was dismissed with prejudice and at their costs and defendants were awarded $1,000 in attorney's fees.
 
 
 22
 We have before us the order under Rule 37(b)(2)(C), Fed.R.Civ.P., dismissing the complaint in its entirety. This dismissal renders the prior discovery order final. Appeal of an order imposing sanctions necessarily includes a review of the underlying discovery order. Familias Unidas v. Briscoe, 544 F.2d 182 (5th Cir. 1976); 8 Wright & Miller, Federal Practice & Procedure : Civil § 2006. The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party.
 
 
 23
 NFT and Hastings argue that the order compelling discovery of the membership list abridges associational and privacy rights guaranteed by the First and Fourteenth Amendments. Disposition of their claim is governed by the principles enunciated in N. A. A. C. P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and its trailing decisions, including Familias Unidas as the Supreme Court said:
 
 
 24
 It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as the forms of governmental action in the cases above were thought likely to produce upon the particular constitutional rights there involved. This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. When referring to the varied forms of governmental action which might interfere with freedom of assembly, it said in American Communications Assn. v. Douds, 339 U.S. 382, 402 (70 S.Ct. 674, 94 L.Ed. 925): "A requirement that adherents of particular religious faiths or political parties wear identifying armbands, for example, is obviously of this nature." Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is of the same order. Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.
 
 
 25
 We think that the production order, in the respects here drawn in question, must be regarded as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association. Petitioner has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility. Under these circumstances, we think it apparent that compelled disclosure of petitioner's Alabama membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have a right to advocate . . .
 
 
 26
 357 U.S. at 462, 78 S.Ct. at 1171.
 
 
 27
 The Supreme Court has been consistent in its articulation of limitations on activities which infringe these constitutional rights. In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975), it reiterated:
 
 
 28
 (W)e have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment. E. g., Gibson v. Florida Legislative Comm., 372 U.S. 539 (83 S.Ct. 889, 9 L.Ed.2d 929) (1963); NAACP v. Button, 371 U.S. 415 (83 S.Ct. 328, 9 L.Ed.2d 405) (1963); Shelton v. Tucker, 364 U.S. 479 (81 S.Ct. 247, 5 L.Ed.2d 231) (1960); Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); NAACP v. Alabama, 357 U.S. 449 (78 S.Ct. 1163, 2 L.Ed.2d 1488) (1958).
 
 
 29
 We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest. Since NAACP v. Alabama we have required that the subordinating interests of the State must survive exacting scrutiny. We also have insisted that there be a "relevant correlation" or "substantial relation" between the governmental interest and the information required to be disclosed. See Pollard v. Roberts, 283 F.Supp. 248, 257 (ED Ark.) (three-judge court), aff'd., 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968).
 
 
 30
 424 U.S. at 64, 96 S.Ct. at 656.
 
 
 31
 Where, as here, constitutionally protected rights are infringed by the disclosure order, the party seeking discovery must demonstrate "an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect which . . . these disclosures may well have," N. A. A. C. P. v. Alabama, 357 U.S. at 463, 78 S.Ct. at 1172.
 
 
 32
 In our review of this record we do not find justification for the disclosure order of March 22, 1977. The Board sought to justify its discovery request on the grounds that it needed the information to evaluate and defend against the claims of dues loss, stifled growth, harassment and intimidation. Any substance these reasons may once have possessed has long since evaporated. Appellants waived their request for class action, dismissed the claim for monetary damages and limited the allegations of harassment and intimidation to the members whose names had been furnished. Further, appellants filed their tax records, financial records and all minutes of meetings and advised of the number of members who voted in the last union election. They even furnished the name of the author of the union constitution, information appellees insisted they needed.
 
 
 33
 The Board would distinguish the instant case from N. A. A. C. P. v. Alabama on the grounds that the facts here do not support any assertions of retaliation if the names are revealed. We cannot accept this. The complaint claims that NFT members have been harassed. To direct disclosure of the membership list would subject the other members to the very retaliatory measures they seek to avoid. As we earlier noted in Familias Unidas :
 
 
 34
 To require them to forfeit that which they seek to protect in order that they might receive federal assurance that they are indeed entitled to it would be an abdication by the federal court of not only its federal stature, but its judicial robes as well.
 
 
 35
 544 F.2d at 192.
 
 
 36
 We find that the district court abused the discretion inherent in Rule 37(b) (2)(C). The sanction of dismissal far outstrips any burden attendant upon appellants' failure to comply with the discovery order of March 22, 1977, and the follow-up enforcement order. Dismissal was a totally unwarranted sanction. On remand, should it be demonstrated that disclosure of the names of the other NFT members is essential to the proper preparation and disposition of this case, the court should tailor further discovery consistent with constitutional limitations. All available alternatives, short of dismissal, should be explored.
 
 
 37
 Finally, we address the issue of attorney's fees. Not only have appellants been stymied in their efforts to pursue a claim which the district court found to have some merit, they have been ordered to pay appellees $1,000 for attorney's fees. We reverse. We find no further comment necessary other than to observe that should appellants prevail in their § 1983 claim, they may be entitled to an award of attorney's fees under 42 U.S.C. § 1988. Davis v. Board of School Com'rs. of Mobile County, 600 F.2d 470 (5th Cir. 1979). Should the district court ultimately conclude that an award of attorney's fees is appropriate, it shall be guided by the directives contained in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).
 
 
 38
 The orders of March 22, 1977, and May 11, 1977, as they relate to disclosure of membership lists, are vacated. The award of attorney's fees is reversed. The dismissal order of October 14, 1977, is reversed. The matter is remanded for further proceedings not inconsistent herewith.
 
 
 39
 REVERSED and REMANDED.