Bessie Lee BROWN, et vir Willie Brown, Plaintiffs-Appellees,

v.

ARLEN MANAGEMENT CORPORATION d/b/a Spartan Department Stores, Spartan Atlantic Department Stores, and/or Atlantic Department Stores, Individually and as general partner of Dall Associates, a limited partnership, and Arlen Realty and Development Corp., d/b/a Spartan Department Stores and Atlantic Thrift Centers (Atlantic Development Stores) of Dallas, Defendants-Appellants.

No. 81–1167
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1981.

Rehearing Denied Jan. 28, 1982.

Oster & Kaufman, Stanley M. Kaufman, Aaron S. Kaufman, Dallas, Tex., for defendants-appellants.

John D. Crawford, Dallas, Tex., for plaintiffs-appellees.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

PER CURIAM:

Bessie Lee ("Mrs. Brown") and Willie Brown ("Mr. Brown"), Plaintiffs-Appellees, sued Spartan Department Stores and Atlantic Thrift Centers ("Spartan-Atlantic"), and various corporate management entities which owned or managed Spartan-Atlantic, in a personal injury action seeking to recover damages for injuries Mrs. Brown allegedly sustained as a result of a fall at a Spartan-Atlantic store in Dallas, Texas. The suit was based on diversity of citizenship. Following discovery, two trials were held. The first resulted in a mistrial; in the second, a jury awarded Mr. and Mrs. Brown $145,000 in damages for her physical pain, mental anguish, loss of earnings, physical impairment, disfigurement, his loss of comfort and society of his wife and past and future medical care. Spartan-Atlantic appeals, arguing that there was insufficient

evidence to support a finding of negligence; that there was insufficient medical testimony that any negligence was a proximate cause of Mrs. Brown's alleged injuries; that the U. S. magistrate and trial court abused their discretion in deeming admitted certain admissions requested by the Browns but not answered by Spartan-Atlantic on the grounds of insufficient information; that counsel for the Browns made comments before the jury that were so prejudicial as to justify a new trial; and that there was no evidence of loss of Mrs. Brown's comfort or society by Mr. Brown to justify submission of that element of damage. Because we find no merit in the contentions of Spartan-Atlantic, we affirm the decision of the trial court.

## I. FACTS

Mrs. Brown went shopping at a Spartan-Atlantic store in Dallas, Texas, on September 18, 1975. As she left the store carrying several packages, she slipped and fell on the sidewalk outside the store in an area covered by a metal porch. She looked around and saw a slick spot on the sidewalk. Mr. Brown saw his wife fall and went to her aid. While helping his wife, he also noticed a small, damp, slick spot on the sidewalk where she had fallen.

Though Mrs. Brown suffered bruises or abrasions on her elbow, head, lower back and ankle, she did not go to a doctor immediately but went home where she treated her injuries, especially the one to her ankle, with a variety of home remedies. Mrs. Brown, a diabetic and prone to various medical complications including infections of the extremities, experienced swelling and pain in her left foot between September 18 and September 24, 1975. On September 24, 1975, Mrs. Brown was admitted to a local

hospital complaining of continuing pain and swelling from the injuries she claimed she sustained at Spartan Atlantic. Most notably, her left foot was swollen and infected. She was seen by Dr. E. J. Mason, a surgeon, on September 27, 1975. His diagnosis was that Mrs. Brown had gangrene [1] of the left foot and left lower extremity. Progressive worsening of the gangrenous condition necessitated amputation of Mrs. Brown's lower left leg by Dr. Mason on October 1, 1975.[2]

The Browns brought suit against Spartan-Atlantic, claiming that a dangerous condition existed at the Dallas store where Mrs. Brown fell. Specifically, the dangerous condition alleged was a growth of slick, mossy algae on the sidewalk which resulted from a constant slow drip of water which accumulated after a rain in a pond on the metal porch above the sidewalk. The Browns claimed this condition was known to Spartan-Atlantic, and that Spartan-Atlantic failed to correct the leaky metal porch or, in the alternative, to warn customers of the potential hazard of a slick sidewalk. The Browns further alleged that the fall at Spartan-Atlantic caused an injury which resulted in an infection, aggravation of Mrs. Brown's preexisting diabetic condition, gangrene, and ultimate amputation of her left leg.

Spartan-Atlantic defended, claiming that there was no dangerous condition, that it was not negligent in its store safety and that Mrs. Brown was contributorily negligent and had assumed the risk of any existing dangers. At trial, Spartan-Atlantic moved for, and the court denied, a directed verdict. After a jury verdict for the Browns, Spartan-Atlantic moved for a judgment n. o. v. and, in the alternative, for a new trial. Both motions were denied. Spartan-Atlantic appealed the denials of the judgment n. o. v. and new trial.

1. Dr. Mason described diabetic gangrene as a "wet gangrene" which occurs as the result of an infection as opposed to a "dry gangrene" which results from poor circulation. II Rec. 242.

2. Due to complications from the initial surgery Mrs. Brown underwent further amputation of her left leg above the knee. On appeal, Spartan-Atlantic does not question what effect these further complications would have upon

## II. PERTINENT DISCOVERY

During the course of discovery, the Browns requested thirty-one admissions[3]

from Spartan-Atlantic.[4] Spartan-Atlantic stated, in its response of March 12, 1979, that it was

---

its liability. As such, the further surgery is irrelevant to our decision.

3. The admissions were requested pursuant to Rule 36 of the Federal Rules of Civil Procedure:

(a) Request for admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

. . . .

If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he stated that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it.

The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served. The court may, in lieu of these orders, determine that final disposition of the request be made at a pretrial conference or at a designated time prior to trial. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

(b) Effect of admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

4. Admissions requested and pertinent to our discussion are as follows:

1. Defendant Arlen Management Corp., individually, owned the retail store sometimes known as Spartan-Atlantic Department Store or some name of similar import in the vicinity of 322 W. Kiest Blvd., Dallas, Texas, during the month of September, 1975.

2. Defendant Arlen Management Corp. d/b/a Spartan Department Store, Spartan Atlantic Department Stores and/or Atlantic Department Stores, owned the retail store sometimes known as Spartan-Atlantic Department Store or some name of similar import in the vicinity of 322 W. Kiest Blvd., Dallas, Texas, during the month of September, 1975.

3. Defendant Arlen Management Corp., as general partner of Dall Associates, a limited partnership, owned the retail store sometimes known as Spartan-Atlantic Department Store or some name of similar import in the vicinity of 322 W. Kiest Blvd., Dallas, Texas, during the month of September, 1975.

4. Defendant Arlen Realty and Development Corporation, individually, owned the retail store sometimes known as Spartan-Atlantic Department Store or some name of similar import in the vicinity of 322 W. Kiest Blvd., Dallas, Texas, during the month of September, 1975.

5. Defendant Arlen Realty and Development Corporation, individually and d/b/a Spartan Department Stores and Atlantic Thrift Centers (Atlantic Development Stores) of Dallas, owned the retail store sometimes known as Spartan-Atlantic Department Store or some name of similar import in the vicinity of 322 W. Kiest Blvd., Dallas, Texas, during the month of September, 1975.

. . . .

28. That no corrective repairs were made in the area being pointed to by the person in

unable to truthfully either admit or deny such matters because they are not in possession of sufficient facts and information and after the exercise of all reasonable diligence and efforts as evidenced by the Affidavit of Wallace I. Brown filed herein have been unable to obtain such facts and information as would enable them to either admit or deny these matters pursuant to Rule 36(a), F.R.C.P. and state that Defendants have made reasonable inquiry and the information known or readily obtainable by them is insufficient to enable them to either admit or deny.

I Rec. 51.[5]

The Browns, pursuant to Rule 36(a),[6] moved to have the court determine the sufficiency of Spartan-Atlantic's answer and requested that the answers be "deemed admitted" or that amended answers be served.

The motion, pursuant to 28 U.S.C. § 636(b) and Rule 2 of the Local Court Rules of the Northern District of Texas, was heard by a U. S. Magistrate. Counsel for Spartan-Atlantic did not appear at the initial hearing. After a review of the Requests for Admission and answer, the Magistrate ordered the admissions "deemed admitted."

Counsel for Spartan-Atlantic requested a rehearing and reconsideration of the Magistrate's order. After a hearing wherein counsel for both parties presented arguments and a further review of the Requests for Admissions, the Magistrate denied the request for reconsideration, affirming his earlier decision that the Requests for Admissions were deemed admitted. Spartan-Atlantic's appeal to the District Court for reconsideration of the Magistrate's ruling was subsequently denied.

After the deeming admitted of the fact that one or more defendants were aware of a wet, slick spot on the sidewalk and that no corrective action had been taken, the case proceeded to trial.

## III. THE DEEMED ADMISSIONS AND EVIDENCE OF NEGLIGENCE

Spartan-Atlantic claims that there was insufficient evidence to support a finding of negligence by the store with respect to any failure to remove or warn of a slick substance on the sidewalk where Mrs. Brown fell. Because the question of sufficiency here is inextricably bound to the deemed admissions, the propriety of the magistrate's action will be discussed prior to a review of the sufficiency of the evidence.

### A. The Deemed Admissions

The sequence of events leading to the involuntary admission of crucial statements and the statements themselves have been set forth in Part II of this opinion. At

the photos marked No. 1 or No. 2 in Exhibit A hereto.

29. That the channel iron roof support pointed to in an upwards direction by the person in the photos marked No. 1 or No. 2 in Exhibit A herein the area pointed to had corrosion noticeable by a person standing in the position of the person shown in the two photos marked No. 1 or No. 2 in Exhibit A on September 18, 1975.

30. Prior to September 18, 1975, one or more of the Defendants were aware or had noticed there was a slippery area in the porch area pointed to in a downward direction by the person in the photos marked No. 3, 4, 5, 6 and 7 in Exhibit A hereto following a rain after other areas of the porch had dried from the rain.

31. Prior to September 18, 1975, one or more of the Defendants were aware or had noticed that there was a wet area in the porch area pointed to in a downward direction by the person in the photos marked No. 3, 4, 5, 6 and 7 in Exhibit A hereto following a rain after other areas of the porch had dried from the rain.

I Rec. 32–40.

5. The affidavit of Wallace Brown indicated that he had contacted several former employees of Spartan-Atlantic in an attempt to obtain information pertinent to the Requests for Admissions but was unable to acquire the needed information. A perusal of the affidavit shows Mr. Brown seemed to be concerned principally with locating records relating to store ownership. There is no indication that he asked any employee questions relating to the condition of the premises of the Spartan-Atlantic store.

6. *See* note 3, *supra*.

trial, counsel for the Browns read to the jury the admissions that one or more defendants were aware of, or had noticed, a slippery area and a wet area following a rain after other areas of the porch had dried from the rain and that no corrective repairs had been made. These admissions were critical as they, in effect, admitted a key element of negligence, knowledge of a particular condition, that the Browns would have, under Texas law, been required to prove in order to sustain their burden at trial. *See J. Weingarten, Inc. v. Razey*, 426 S.W.2d 538, 539 (Tex.1968).

■ Spartan-Atlantic admits that the standard of review of a decision of a trial court in a matter relating to discovery is whether the trial court abused its discretion in its decision. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100 (5th Cir. 1981); *Hastings v. North East Independent School District*, 615 F.2d 628 (5th Cir. 1980). It is not the responsibility of this Court to say it would have chosen a different order, to substitute our judgment; it is rather our responsibility to decide whether the district court could have entered the order which it did. *Cf. Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976).

■ Spartan-Atlantic cites several cases where a district court decided not to deem admission but rather to order amended answers. Either order is within the scope of Rule 36.[7] Here, where the magistrate (twice) and the trial court, on review, determined that Spartan-Atlantic's inquiry to obtain information relevant to the admissions had not been reasonable, its deeming of admission was well within the purview of its authority.

Indeed, where Spartan-Atlantic had stated, in the Wallace Brown affidavit, that it had located former employees, including Joe Sanders who testified at trial, it seems incomprehensible to this court that Spartan-Atlantic could not have, during the time from September, 1978 to the date of the hearing in September, 1979, formulated reasonable admissions or denials or at least demonstrated to the court what knowledge the former employees possessed. Its failure to so do clearly supports the discretionary decision of the trial court to deem the admissions.[8]

Spartan-Atlantic asks us, without benefit of the transcript of its hearing before the magistrate, to substitute our judgment for his. This we will not do.

**B.  *Sufficiency of the Evidence***

■ Having determined that there was no abuse of discretion in the deeming of admissions, we now turn to the question whether there was sufficient evidence to support a finding of negligence.[9] Spartan-Atlantic requests a judgment n.o.v. on this

---

7. *See* note 3, *supra.*

8. Spartan-Atlantic relies on *City of Rome v. U. S.*, 450 F.Supp. 378 (D.C.1978), *aff'd* 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980) for the proposition that that court had refused to deem admission where there had been reasonable inquiry. Spartan-Atlantic's reading of the case is incomplete. In *City of Rome*, the District Court refused to deem admissions *only* when the offending party agreed to amend the answers. *Id.* at 384. *City of Rome* does not support Spartan-Atlantic's case. To the contrary, Spartan-Atlantic presented to this Court no evidence that it had offered to amend its answers after interviews with former employees it had admittedly discovered. Nor did it request, pursuant to Rule 36(b), that the court allow withdrawal of the admissions. *See* note 3, *supra.*

9. The Supreme Court of Texas has cited with approval Section 343, Restatement of Torts, as the applicable test for negligence:

" 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereof if, but only if, he

" '(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

" ' . . . .

" '(c) invites or permits them to enter or remain upon the land without exercising reasonable care

" '(i) to make the condition reasonably safe, or

" '(ii) to give a warning adequate to enable them to avoid the harm.

. . .' "

*J. Weingarten, Inc. v. Razey*, 426 S.W.2d 538, 539 (Tex.1968).

issue. Our review of its request is governed by the standard whether, given all the evidence in the case, a reasonable man could not arrive at a verdict contrary to Spartan-Atlantic. If such is the case, judgment n.o.v. is proper. If however, there is enough evidence that reasonable men might differ, the judgment should be denied. *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969).

A review of the evidence shows: that Mr. and Mrs. Brown observed a slick wet spot where she fell at Spartan-Atlantic; that the defendants knew a slick, wet spot existed and had failed to take corrective action or warnings to customers; that the proper conditions for algae growth existed under the metal porch; that algae grew, at least some times, under the metal porch after a rain; that it had rained two days prior to Mrs. Brown's fall; that the condition causing the algae growth, the leaky metal porch, existed before September 18, 1975. Spartan-Atlantic introduced evidence that no persons had reported falling prior to Mrs. Brown's fall and expert testimony that an accumulation of algae was unlikely. At the least, the admissions of Spartan-Atlantic and the testimony of the Browns and of the expert witnesses raise conflicting questions of fact which were reasonably within the province of the jury and from which Spartan-Atlantic's failure to exercise reasonable care in correcting or warning of the condition could be inferred.[10]

## IV. THE QUESTION OF CAUSATION

Spartan-Atlantic alleges there was insufficient evidence that the aggravation of Mrs. Brown's diabetes which resulted in the ultimate amputation of her leg was caused by her fall at its store. It claims a judgment n.o.v. is appropriate. The ques-

tion again is whether there was enough evidence upon which reasonable men could disagree to warrant submitting the case to the jury. *Boeing v. Shipman, supra.*

Under substantive Texas law, controlling in this case, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it was necessary for the Browns to prove that there was a "reasonable medical probability" that the injury at Spartan-Atlantic caused the amputation. *Otis Elevator Company v. Wood*, 436 S.W.2d 324 (Tex. 1968). Spartan-Atlantic argues that there was no, or at least insufficient, evidence on this point. Our review of the record shows that, while the evidence as to probability is not overwhelming, there is sufficient testimony by Dr. Mason that Mrs. Brown's fall caused the resulting complications and eventual amputation. The following dialogue occurred between the Court and Dr. Mason:

THE COURT: Well, let me ask a question. You have seen the Plaintiff a number of times, Dr. Mason. Do you have an opinion as to whether, solely from the fall, the accident that occurred on September 18, if she's had physical pain and suffering as a result of that fall?

THE WITNESS: I have an opinion.

THE COURT: All right. What is your opinion?

THE WITNESS: She has. She had pain at the time of the fall and prior to the time that—all the way up to the time when she had her surgery. And after her surgery she continued to have pain in the area, and anguish and suffering.

II Rec. 219.

This testimony, combined with other medical testimony and Mrs. Brown's description of her injury and resulting compli-

---

**10.** Spartan-Atlantic relies on numerous "slip and fall" cases in Texas where judgment was rendered for the defendant because of an absence of proof that "it knew or should have known" of a foreign substance in its store. Here, however, the analysis is different as the admissions supply the proof, lacking in cases cited to us, that Spartan Atlantic knew a wet, slippery spot formed after rain. With this ad-

mission, evidence that rain had fallen two days before the fall, and evidence that such rainfall could have produced the slick algae, there was sufficient evidence for the jury to infer that Spartan-Atlantic should have taken some corrective action or supplied warnings. *See H. E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.).

cations of swelling and infection, is sufficient to withstand a judgment n.o.v.[11]

## V. CONDUCT OF COUNSEL

██ Spartan-Atlantic argues that several statements made by the Browns' counsel were so prejudicial to its case that it must be granted the new trial which the trial court denied. Reversal of the trial court is only proper on a clear showing that it abused its discretion in denying the new trial. *Martinez v. Food City, Inc.*, 658 F.2d 369, 372 (5th Cir. 1981). There is no indication of such abuse of discretion here.

Spartan-Atlantic claims the spector of defendant's insurance was injected into the case. While Dr. Mason did mention responding to a letter from an insurance company, there was nothing in the record to indicate he was referring to Spartan-Atlantic's insurance carrier or that the jury would have assumed that from the context of the testimony.

Additionally, Spartan-Atlantic claims that mention, by the Browns' counsel, of the dismissal of a malpractice suit by the Browns against Dr. Mason and by Dr. Mason's statement that he had seen Mrs. Brown "at the first trial" was prejudicial. Spartan-Atlantic neither explains to us why this was prejudicial nor cites judicial decisions holding that such attenuated, ambiguous statements justify a new trial. This argument is frivolous.

Finally, Spartan-Atlantic argues that comments by counsel during closing argument were prejudicial. The court below reviewed the record after having heard closing argument and being appraised of Spartan-Atlantic's objections and found no cause for a new trial. Our review indicates that the court did not abuse its discretion in determining that several isolated remarks, only one of which Spartan-Atlantic even objected to, were so prejudicial as to warrant a mistrial.

## VI. DAMAGES FOR "LOSS OF COMFORT AND SOCIETY"

In the Court's charge to the jury in special issue number thirteen,[12] it included as a possible element of damage Mr. Brown's loss of the comfort and society of his wife. Spartan-Atlantic complains that there was no evidence of such loss and that Mr. Brown said, at trial, that he sought nothing out of the lawsuit. In reviewing this allegation before submission of the case to the jury, the court stated:

THE COURT: ... I'm going to—I'll overrule the objection, for this reason: I heard him [Mr. Brown] say in substance that he wasn't looking for anything out of this lawsuit, but two things strike me: Number one, obviously, the man is not— is not very intelligent, that he's kind of—

11. Additionally Dr. Mason testified:
Q And was the type of injury that Bessie Brown had at the shopping center the type of injury that would come within one of the several things that you mentioned that would aggravate her diabetes?
A It was.
II Rec. 303.
Where Spartan-Atlantic failed to include a jury instruction concerning medical probability and failed to object to the one given by the court, the above testimony, under Texas law, even *without* a clear statement of "probability" but of "possibility" only is arguably sufficient. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 331-32 (Tex.1968).

12. Special Issue number thirteen asks:
What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Bessie Brown and her husband Willie Brown, for her injuries which you find from a preponderance of the evidence resulted from the occurrence in question?
You may consider the following elements of damage, if any, and none other:
a. Physical pain and mental anguish which Bessie Brown has suffered in the past.
b. Physical pain and mental anguish which, in reasonable probability, she will suffer in the future.
c. Loss in earnings in the past.
d. Loss of earning capacity which, in reasonable probability, she will suffer in the future.
e. Physical impairment.
f. Disfigurement.
g. Husband's loss of comfort and society of wife.
Answer in dollars and cents, if any.
ANSWER ____135,000____.
I Rec. 169.

just kind of ignorant, really, and so he may not really understand thoroughly the effect of his answers. But secondly, I think his testimony, itself, shows that he has lost some comfort and society by virtue of what he testified about how she used to be able to do this and she can't do that. And I think, just being realistic, he's entitled to have that submitted, so I'll overrule the objection.

III Rec. 249–250.

Because loss of comfort and society is a proper element of damage where there is evidence of the wife's inability to accomplish tasks subsequent to the injury which were performed before the injury, *El Paso City Lines v. Dudney*, 280 S.W.2d 303 (Tex.Civ.App.—El Paso 1955, writ ref'd n.r. e.), we believe the trial court's analysis of the testimony and submission of the element of damage was well within its discretion. There was no error by the trial court in submitting this element to the jury.

The verdict is, in all respects, AFFIRMED.