United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 28, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-11013
Summary Calendar

THOMAS J. CONBOY,

Plaintiff-Appellant,

versus

EDWARD D. JONES & CO., L.P.
d/b/a EDWARD JONES,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Thomas J. Conboy, proceeding *pro se*, appeals from the district court's grant of

Edward Jones' motion for summary judgment. Conboy raises several arguments on appeal, principal

among which is that the district court erred in dismissing his claim under the Age Discrimination in

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Employment Act (ADEA) claim. 29 U.S.C. § 621. Because we do not find that the district court erred in any respect asserted by Conboy, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Conboy sought employment with Edward Jones, and sent the corporation a resume in December of 2001. Upon receipt of his resume, a recruiting representative from Edward Jones named Elizabeth Wilson sent Conboy an application packet which he was required to complete before he could be fully considered for a position as an Investment Representative. Additionally, Wilson notified Conboy that the company was arranging a telephone interview between himself and Ken Box, an Investment Representative who was employed with Edward Jones' Waxahachie, Texas office, and who served as a regional leader with the company.

During the course of Conboy's conversation with Box, the two gentleman discussed several matters, including the nature of the work at Edward Jones, aspects of Box's responsibilities with the company, and Conboy's admittedly peripatetic work history.[1] Following their conversation, Conboy was under the impression that Box was prepared to make him an offer of employment. However, in truth Box had no capacity to make such an offer. Subsequent to their conversation, however, Box did tell Wilson, that Conboy appeared to be a viable candidate, but that his work history gave Box cause for concern.

Wilson later had a conversation with Conboy wherein she expressed that Box had recommended him for a position with Edward Jones. During the conversation, she also discussed

_____

[1] As the district court described it, Conboy's previous work experience indicated -- not including those stretches were he was self-employed -- that he had "left three [companies he had worked for] because they went out business, three because they closed the office he was working at, one because of a major reduction in force, four to pursue another business opportunity, and one because the partnership contractually expired."

2

Conboy's employment background. She further informed Conboy that he would need to complete certain documents so that the company could proceed with a background check.

Conboy assumed that because he had been asked to submit his completed application packet, as well as because he had granted Edward Jones permission to conduct a background check, he was all but assured that he would be tendered an offer of employment. However, he believes that any implicit assurances that he had received that he would be hired were ultimately lost because, when he finally submitted his employment application, it reflected his age. In response, Edward Jones's hiring personnel argued that Conboy did not receive anything in the way of an assurance that he would be hired, noting, *inter alia*, that Box had no hiring authority. Moreover, the only reason that he was asked for his employment application and for express authorization to conduct a background check was because -- in accordance with the Edward Jones's policy -- Conboy had already been granted a telephone interview. Nevertheless, Conboy's full application was subsequently reviewed by Edward Jones's hiring personnel. He was not extended an offer of employment. Edward Jones asserted that Conboy did not receive an offer because his employment record was itinerant and his compensation history fluctuated.

Conboy then filed a complaint with the Texas Commission on Human Rights (TCHR) and the Equal Employment Opportunity Commission (EEOC), asserting that he had been discriminated against based on his age. Following an investigation, the TCHR determined that Conboy had failed to make a showing that Edward Jones had contravened any Texas statute. The TCHR also informed Conboy that notwithstanding its finding, he still had the right to file a formal civil action within sixty days of its determination. Similarly, on July 17, 2003, the EEOC notified Conboy that it too would

3

not pursue his allegations any further; however, he was informed that he retained the right to bring a federal civil rights action against Edward Jones within ninety days of the EEOC's determination.

On October 7, 2003, Conboy brought an action in the United States District Court for the Northern District of Texas pursuant to the ADEA, and various Texas civil rights statutes, asserting that Edward Jones had discriminated against him on account of his age. In addition, on October 9, 2003, Conboy moved for permission to proceed *in forma pauperis*, which was granted. On that same day, he filed a motion for the appointment of counsel; however this motion was denied. Later, Conboy moved for the district court to compel production of certain documents within Edward Jones's possession related to their hiring practices -- for example, he sought all information related to *every* age discrimination claim that had been filed against Edward Jones.

On August 10, 2004, the district court determined -- in an order that affirmed a ruling by the magistrate judge -- that Conboy's motion to compel more expansive discovery was overbroad and therefore was denied. The district court then proceeded to address Conboy's remaining contentions. First, the court found that Conboy's claims brought pursuant to Texas law had been waived because they were untimely. The court also rejected Conboy's ADEA claim because he could not satisfy his summary judgment burden by showing, *inter alia*, that Edward Jones's reasons for failing to hire him were pretextual in nature. Accordingly, the district court granted Edward Jones's summary judgment motion. [2]

Conboy timely appealed the district court's ruling, averring that it was flawed in several respects. As many of Conboy's grounds of error overlap, for clarity's sake they will be consolidated

---

[2] In addition, Conboy had also concurrently moved for summary judgment. This motion was denied by the district court.

where necessary. First, Conboy asserts that the district court erroneously found that his ADEA claim was without merit. Second, he contends that the district court improperly denied his motion to compel discovery. Third, Conboy argues that the district court erred when it failed to appoint counsel for him, as he was proceeding *pro se*. Fourth, he asserts that his right to a trial by a jury was violated because his cause of action was dismissed at the summary judgment stage. Fifth, Conboy claims that because he was proceeding *pro se*, the district court should not have assessed costs against him. Sixth, he suggests that the district court judge who heard this matter had a tremendous degree of personal bias against him, such that Conboy believes that he did not receive a fair hearing. Consequently, as it pertains to this final ground of error, not only does he seek reversal of this entire matter, but also reassignment to another judge who, from Conboy's perspective, will exhibit less enmity towards a *pro se* ADEA litigant such as himself.

We will address Conboy's contentions in turn.

## ANALYSIS

A party's motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party has the burden of demonstrating that the there are no genuine issues of material fact in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The principal question that a district court confronts is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

5

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue at trial." TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002). We review the district court's grant of summary judgment *de novo* and apply the identical standard as did the district court. See Chaplin v. Nations Credit Corp., 307 F.3d 368, 371 (5th Cir. 2002).

A.      ADEA Claim

It is well-understood that failure to hire an individual simply by virtue of that individual's age constitutes a violation of the ADEA. The statute provides that an employer may be found liable for "refus[ing] to hire . . . any individual or otherwise discriminat[ing] against any individual with respect to the compensation, terms, conditions, or privileges of employment," based on that person's advanced age. 29 U.S.C. § 623(a)(1). In this case, Conboy does not present any direct evidence that Edward Jones engaged in unlawful age discrimination. Instead, the evidence that he relies upon is more properly characterized as circumstantial. When circumstantial evidence is proffered by an alleged victim of age discrimination, a district court's determination as to whether a claimant should survive a motion for summary judgment requires application of the burden shifting analysis drawn from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . Although the McDonnell Douglas framework is usually employed in Title VII cases, we have plainly recognized that it has equal applicability in the context of an ADEA action. See Patrick v. Ridge, 394 F.3d 311, 315 n. 10 (5th Cir. 2004);  see also Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005).

6

Consistent with McDonnell Douglas, in order to defeat Edward Jones's summary judgment motion, Conboy was required to first establish a prima facie case of age discrimination,[3] which required Conboy to make a showing that: (1) he was not hired for the position that he sought; (2) he met the requisite qualifications for the position; (3) he was over the age of forty at the time that he was not hired; and (4) an individual who was not a member of the protected class, or a younger individual, was hired for the position. See, e.g., Machinchak, 398 F.3d at 350; Haas v. Advo Systems, Inc., 168 F.3d 732, 733 (5th Cir. 1999). Satisfying these foregoing elements would support an inference that Conboy had been discriminated against.

If Conboy established a prima facie case, the onus would then be placed on Edward Jones to bring forth a nondiscriminatory explanation as to why it refused to hire him. Machinchak, 398 at 350. Because the district court in this matter found that the rationale offered by Edward Jones for why it did not hire Conboy was sufficient, and thereby rebutted the inference of discrimination, in order to stave off summary judgment, Conboy was required either to: (1) make a showing that Edward Jones's proffered rationale for failing to hire him was untrue; or (2) present evidence indicating that the dispositive factor which led to his not being hired was his age. Id. at 352.

The district court found that Conboy satisfied the requisite elements for establishing his prima facie case. On appeal, Edward Jones maintains that Conboy did not sufficiently make this showing, and that the district court's finding in this regard was in error. Notwithstanding the parties' averments, we will nevertheless assume *arguendo* for the purposes of this opinion that Conboy met

---

[3] The traditional prima facie test employed in ADEA claims must be modified slightly in this instance because we are confronting a slightly more unusual instance wherein Conboy is not alleging that he has been dismissed from a position because of his age, but that was not hired because of his age.

his prima facie burden. We make this assumption because we believe within the understanding of the McDonnell Douglas framework, Conboy has not satisfied his summary judgment burden of showing pretext.

Edward Jones argued to the district court, and again in its brief on appeal, that the reason that Conboy was not hired by the company had nothing to do with his age. In fact they note that a significant percentage of individuals who have been hired for the position of Investment Representative with the company during the relevant time period were over the age of 60. Indeed, the district court was persuaded that Edward Jones's explanation for refusing to hire Conboy was meritorious based on, *inter alia*, the itinerant nature of his employment record, the fluctuating nature of his compensation history (which did not bode well in a commission-driven business), and some factual discrepancies contained within his resume. Relying on these factors, the district court found that Edward Jones had proffered a legitimate nondiscriminatory reason for refusing to hire Conboy, thereby rebutting the inference of discrimination that had been created upon the district court's finding that Conboy had established his prima facie case.

Because Edward Jones made its requisite showing, Conboy was thereafter required to show either that Edward Jones's reasons for not hiring him were pretextual or that the dispositive reason that he was not hired was his age. During the proceedings before the district court, and again before this panel, Conboy simply asserts that he was told that his employment background was not problematic, and that if he were permitted to engage in greater discovery he could rebut Edward Jones's assertions. However, irrespective of Conboy's disagreements with the district court's discovery rulings, he has still not presented a modicum of evidence that the reasons proffered by

8

Edward Jones were in fact untruthful, or, that the motivating reason for why he was not hired was his age.

Because we find that the district court correctly held that Conboy could not satisfy his burden within the <u>McDonnell Douglas</u> framework, his claims brought under the ADEA were appropriately dismissed.

B.   <u>Limitations on Discovery</u>

Conboy argues that the district court erred by refusing to allow him to engage in discovery as extensive as he would have preferred. For example he sought, *inter alia*, to have Edward Jones produce all employment applications that were submitted to the corporation during the previous three years, and the records for every ADEA claim that had ever been brought against the corporation. He implies that if he had had access to this information he would have had a better opportunity to actually demonstrate that a genuine issue of material fact was in dispute because, in his estimation, these hiring records and discrimination claims would have revealed the extent of Edward Jones's "pattern and practice of age bias."

It should be noted that the district court permitted some of the discovery requests sought by Conboy, but not all. The district court observed that Conboy was seeking the hiring applications of tens of thousands of unrelated individuals, and that this would prove to be exceedingly burdensome to Edward Jones, particularly because during discovery stage of these proceedings the company had already provided the entirety of its employment application statistics from 2001 and 2002 -- the years relevant to this cause of action-- including the ages of the individuals whom were hired by the corporation.

In addition, the district court did not believe that Edward Jones should have been required to submit the records of every ADEA claim ever brought against the company, particularly because the overwhelming majority of these cases would not be germane to Conboy's allegations.[4] The district court further observed that Conboy had already been permitted to have access to all information in Edward Jones's possession related to ADEA claims brought by individuals who had asserted that the company had refused to hire them because of age. Moreover, the district court noted that Conboy had been provided with the records of every ADEA claim that had been brought against Edward Jones during the three years prior to Conboy's complaint. Notwithstanding, Conboy still believes that the district court's discovery rulings were impermissibly restrictive.

We note that it is difficult for a litigant to challenge a district court's discovery ruling on appeal. District courts are vested with a large measure of discretion as it relates to establishing the scope of discovery, and such determinations will only be reversed if a reviewing court finds that the district court has abused its discretion. See Brown v. Arlen Management Corp., 663 F.2d 575, 580 (5th Cir. 1981). Evidence sought to be admitted through the discovery process must be circumscribed to the extent that it must be of some relevance to the proceedings. See Wyatt v. Kaplan, 686 F.2d 276, 284 (5th Cir. 1982). Finally, it is not the province of this court to assess whether an error has been made simply based on our own personal perspective. Rather, we must determine whether the district court's ruling was appropriate in light of the relevant facts of the particular case. See Brown, 663 F.2d at 580.

---

[4] Most of the discrimination claims that had been brought against Edward Jones involved allegations that individuals were dismissed from their positions with the company because of their age. The district court recognized that the facts of this case were somewhat different because it actually involved a refusal to hire claim.

10

Our review of the district court's discovery rulings do not suggest that an error was committed. The limitations imposed by the district court were necessary in order to cabin discovery to only evidence that would be relevant to Conboy's failure-to-hire claim. Therefore, we find that the district court's efforts to circumscribe the expansive nature of Conboy's discovery requests did not constitute an abuse of discretion.[5]

C.     Failure to Appoint Counsel

Conboy argues that the district court erred by failing to appoint counsel for him. He asserts that because he was proceeding *pro se*, and he lacked the legal sophistication of his opposing counsel, he was at a distinct disadvantage . As such, he believes that he was all but assured of having his claims dismissed because it is his understanding that *pro se* litigants -- particularly in ADEA actions -- rarely prevail.

This court has previously noted that a *pro se* litigant's request to be appointed counsel in a civil rights action would only be granted under "exceptional circumstances;" and that the denial of a request for appointed counsel would only be reversed if a reviewing court found that the district court abused its discretion. See Jackson v. Dallas Police Department, 811 F.2d 260, 261 (5th Cir. 1986). This court has similarly recognized that a district court must consider four separate criteria before it may properly render a decision on a request for the appointment of counsel in a civil case. The factors that must be considered are:

---

[5] Moreover, Conboy suggests that the district court erred because it did not permit Ken Box to be deposed. Edward Jones argues that Conboy never sought to depose Box during proceedings before the trial court. We believe that because the record does not indicate that Conboy ever expressly moved to depose Box, it would be improvident to consider this issue for the first time on appeal. See generally, e.g., Singleton v. Wulff, 428 U.S. 106, 120-21 (1976). Thus we believe that Conboy has waived this ground of error.

11

(1) the type and complexity of the case;
(2) whether the [pro se litigant] is capable of adequately presenting his case;
(3) whether the [pro se litigant] is in a position to investigate adequately the case; and
(4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.

Id. (quoting Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982)).

The district court fully considered the aforementioned factors and noted that Conboy had demonstrated a basic understanding of court procedures and was capable of bringing forth his claims in a coherent and logical manner. Therefore the district court found that exceptional circumstances did not present themselves sufficient to warrant the need for the appointment of counsel.

We find that the district court did not err in its denial of Conboy's request. In fact, our review of the record does not suggest that Conboy's claims are so novel that only a highly trained, experienced, and specialized lawyer would have the capacity to prosecute this action. To the contrary, it is clear that in this matter, Conboy has very ably "present[ed] motions and . . . fil[ed] supporting papers in behalf of his case." Jackson, 811 F.2d at 262. Consequently, we do not perceive that it was an abuse of discretion for the district court to have denied Conboy's motion for the appointment of counsel.

D.      Constitutional Right to a Jury Trial

Conboy avers that because the district court granted Edward Jones's motion for summary judgment, his Seventh Amendment right to a jury trial was implicated. We have had some occasion to consider this contention. We briefly reiterate that the district court granted Edward Jones's motion for summary judgment on Conboy's ADEA claims only after it determined that there were no genuine issues of material fact in dispute. Also, under the McDonnell Douglas burden shifting framework, in order to survive summary judgment, Conboy was required to present evidence

12

suggesting either that Edward Jones's proffered reasons for not hiring him were untrue or that his age was the dispositive reason for his not being hired. Conboy made neither showing, consequently the district court granted Edward Jones's motion for summary judgment. In so doing the district court did not violate Conboy's Seventh Amendment right to trial because no such right exists when "a party fails to make [a Rule 56]-required demonstration that some dispute of material fact exists which a trial could resolve." Ogelsby v. Terminal Transport Co., Inc., 543 F.2d 1111, 1113 (5th Cir. 1976).

### E. Assessment of Costs

Conboy opines that it was improper for the district court to assess costs against him. Edward Jones counters by noting that this claim has been waived because he never contested the assessment of costs at the district court level. The standard of review under these circumstances is whether the district court abused its discretion when it assessed costs against Conboy. See McDonald v. Union Carbide Corp., 734 F.2d 182, 184 (5th Cir. 1984). Our review of the district court's determination in this regard is exceedingly circumscribed. See LeLaurin v. First Nat'l Bank of San Antonio, 391 F.2d 687, 692 (5th Cir. 1968). Therefore, because we do not find that the assessment of costs in this matter -- $792.80 for deposition costs -- was an abuse of the district court's discretion, and because it was not challenged below, we hold that the assessment of costs determination made by the district court should adhere.

### F. Judicial Bias

Conboy avers that the district court judge who presided over this matter had a personal bias against him to such an extent that the judge, presumably, could not fairly rule on Conboy's claims. Concurrently, Conboy believes that the district court judge was also biased against him because he was proceeding *pro se*. While not presented with the greatest degree of clarity, Conboy's allegations

13

of bias center around the district court's rulings related to the denial of both his ADEA claims and the denial of his successive motions to compel more encompassing discovery.

Conboy apparently misapprehends the requisite showing that must be made in order to demonstrate that a judge is so biased as to require recusal from a particular matter. The Supreme Court has noted that rarely if ever will a district court judge's rulings in and of themselves provide the basis for a showing of bias. See Liteky v. United States, 510 U.S. 540, 554 (1994). Moreover, rulings made by a judge during the course of a proceeding will "not constitute a basis for a bias . . . motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. This is particularly so when no showing has been made that the district court judge's alleged antipathy was derived from information gleaned from outside of the judicial proceeding. See id. at 556. Therefore we hold that there has been absolutely no showing made that the district court judge was biased in any manner against Conboy. Similarly, our review of the record does not remotely demonstrate that the district court judge manifested any bias against Conboy because he was a *pro se* litigant. See generally Koetting v. Thompson, 995 F.2d 37, 40 (5th Cir. 1993) (observing that a *pro se* litigant had failed to make *de minimus* showing that the trial court was biased because he was proceeding *pro se*).

## CONCLUSION

For the foregoing reasons, we hold the district court appropriately granted Edward Jones's motion for summary judgment. Therefore, we affirm.

AFFIRMED.