568 So.2d 687 (1990)
Jackie R. COOPER and Faye B. Cooper
v.
STATE FARM FIRE & CASUALTY COMPANY (Two Cases).
Nos. 07-58765, 07-59412.
Supreme Court of Mississippi.
May 30, 1990.
Rehearing Denied October 17, 1990.
*688 C. Collier Carlton, Jr., Anthony L. Farese, John B. Riemenschneider, Farese Farese & Farese Firm, Ashland, for appellants.
Guy T. Gillespie, III, Robert H. Faulks, Holcomb Dunbar Connell Chaffin & Willard Firm, Oxford, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court:

I.

A.
These appeals arise from a civil arson case in which the jury found for the insurer. The first appeal is taken by Jackie and Faye Cooper, Plaintiffs below. They appeal from the denial of their Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for New Trial entered February 6, 1987, assigning four errors. State Farm Fire & Casualty Company, the Defendant below, cross appealed from the denial of sanctions under Rule 56(h).
The second appeal is taken by State Farm Fire & Casualty Company (State Farm) from an adverse ruling on their Motion for Rule 37 Expenses.
We find that the trial court erred in admitting certain hearsay testimony offered by State Farm under the guise of impeachment in violation of Rules 607 and 801 M.R.E.. Therefore, we reverse and remand for a new trial.

B.
Jackie and Faye Cooper owned a home and approximately 30 acres of land in Iuka, *689 Tishomingo County, Mississippi. Their home was insured by State Farm.
The State Farm policy initially provided the following coverage: $39,000.00 on the dwelling, $19,500.00 contents, $7,800.00 loss of use, $1,000.00 for television, stereo, tapes and records, $1,500.00 for jewelry and furs, $1,500.00 for guns, $500.00 for tools and $3,350.00 for cameras, silver and musical instruments. The policy contained an inflationary clause which automatically raised the premiums and amount of coverage. As a result of the inflationary clause, on May 3, 1985 the coverage on the dwelling had risen to $44,400.00, contents was increased to $22,200.00 and loss of use had risen to $8,880.00.
On the evening of Friday, May 3, 1985, while Jackie and Faye Cooper were on vacation in Jackson, Mississippi, a loud noise was heard in the vicinity of the Cooper's residence in Iuka. A neighbor, Nancy Wilson, heard the noise and saw the Cooper's home on fire. She reported the fire to the Tishomingo County Sheriff's Department.
The Fire Chief of Iuka in May of 1985 was Floyd Whitaker. He was notified of the fire before midnight on May 3, 1985 and arrived at the scene of the fire, the Cooper's home, seven (7) or eight (8) minutes later. On arrival he noted that the inside of the house was engulfed with flames, although the roof had not burned through. He also noticed an unburned couch cushion on the front lawn, 30 or 40 feet from the front of the house.
The Cooper's home was totally destroyed by the fire, despite the 500 gallons of water used in an attempt to save the home. The Cooper's were notified of the fire on Saturday morning, May 4, 1985 by their son, Gerald. They immediately returned to Iuka, leaving the camper-trailer they were using in Jackson. They arrived mid-afternoon to find only the chimney standing.
The Cooper's reported the fire to their State Farm Agent on Monday, May 6, 1985. They were given Proof of Loss forms and inventory sheets to fill out and return. The inventory sheets showing a total loss of $34,659.56 was filed June 10, 1985. The Proof of Loss form was filed June 11, 1985.
State Farm conducted an intense investigation of the fire and the Coopers. They determined that the fire was incendiary and probably intentionally set. State Farm denied the Cooper's claim on September 24, 1985 for the following reasons: (1) "the fire resulted from acts chargeable to the named insureds in the policy." (2) "concealments and misrepresentations of material matters by the Coopers during the investigation;" and (3) "there may be other additional facts upon which the company could rely which are not known at this time for denying the claim."
The Coopers filed suit against State Farm in the Circuit Court of Tishomingo County, Mississippi on November 20, 1985. State Farm filed its Answer and Defenses, as well as their first set of interrogatories, request for production of documents and request for admissions on December 19, 1985. The Coopers answered on January 16, 1986. Thereafter, on May 2, 1986, the Coopers filed a Motion to File an Amended Complaint to add punitive damages and a Motion for Partial Summary Judgment on the issue of liability. State Farm filed responses to these motions.
A pre-trial conference was held September 16, 1986, resulting in a Pre-Trial Order. The Coopers' Motion for Summary Judgment was denied September 23, 1986. By Court Order filed September 26, 1986 the Coopers were permitted to amend their complaint. The Amended complaint was filed September 26, 1986. State Farm filed its answer and defenses to the amended complaint October 1, 1986. Trial was set for Monday, December 1, 1986 and estimated to last three (3) days.
State Farm filed a Motion for Partial Summary Judgment on the issue of punitive damages on October 31, 1986, to which the Coopers responded on November 26, 1986. On the day of trial, December 1, 1986, State Farm filed a Motion in Limine seeking to limit comments on the fact that the Coopers had not been indicted or charged with arson in connection with their house fire. The Coopers filed a Motion in Limine seeking to limit testimony regarding telephone calls to agents of State Farm *690 from Faye Cooper's sister, Susie Arnett, on December 2, 1986.
The jury returned a verdict in favor of State Farm on December 4, 1986. The Coopers filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial on December 9, 1986. State Farm filed a Motion for Rule 37 Expenses on December 13, 1986. The trial court entered its Order February 6, 1987 overruling the Coopers motion and taking State Farm's motion under advisement for 45 days. The Coopers filed their Notice of Appeal. State Farm's Motion for Rule 37 Expenses was subsequently overruled and notice of appeal was timely filed.
We now address the first assignment of error on direct appeal which is dispositive of this case and requires reversal.
II.
The Trial Court Erred in Three Regards Relative to Certain testimony of Witnesses Arnett, McClain, Brown and Lomenick. The Trial Court Erred in Failing to Sustain the Coopers' Motion in Limine. The Trial Court Erred in Admitting Certain Testimony Into Evidence. The Trial Court Erred in Failing to Grant a Proper Instruction as to the Testimony.

A.
The facts which give rise to this assignment follow. Susie Arnett, sister of Faye Cooper, was listed as a possible defense (fact) witness on the issue of liability in the Pre-Trial Order, as were Harold Lomenick, Harvey L. McClain and Donnie Brown, employees of State Farm. State Farm indicated to the jury in opening statement that testimony regarding statements made by Faye Cooper and related to State Farm agents by Faye Cooper's sister would be forthcoming. The Coopers filed their Motion in Limine the following day, December 2, 1986.
On the third day of trial, December 3, 1986, State Farm called Susie Arnett as a witness. Direct examination by State Farm consisted entirely of questions and denials of Arnett on the following: (1) that Faye Cooper had told her they (the Coopers) had their house burned; (2) that they had burned their own house; (3) that they knew in advance that their house would be burned or how they "went about having their house burned"; (4) that she made a telephone call to State Farm Agents Donnie Brown or Harold Lomenick and told them of Faye Cooper's bragging about burning the house and what they were going to do with the money, although Arnett did admit talking to Brown and Lomenick in relation to her own insurance.
State Farm subsequently called its investigator in this case, Harvey McClain, and agents Donnie Brown and Harold Lomenick as witnesses. Brown testified, over objection, that he received a telephone call July 1, 1985 from a female identifying herself as Faye Cooper's sister who told him she was tired of hearing the Coopers brag about how they had burned their house and how they were going to spend State Farm's money. At this point in the conversation Lomenick entered the room, got on the line with Brown and Brown got out of the conversation. Brown testified that he did not know who had called.
Lomenick verified Brown's testimony regarding the female caller. Lomenick testified that he got the lady's telephone number, verified from the telephone book that the number was registered to William Arnett and reported this information to the investigator, McClain. Lomenick testified to receiving another telephone call from the same unknown lady ten (10) days prior to trial and while he did not know Susie Arnett, he had heard Arnett's voice during the trial and it sounded similar to the telephone voice.
McClain testified that he learned of the telephone call from Lomenick and called the number given to him in July or September. The person who answered his call identified herself as Mrs. Susie Arnett, acknowledged that she had talked with Brown and Lomenick regarding the fire and requested him to go ahead and pay the Coopers. McClain testified that he had never met Arnett and that he could have been talking to anyone.

*691 B.
This assignment deals with impeachment of a party's own witness with a prior inconsistent statement. Impeachment is governed by Rule 607 of the Mississippi Rules of Evidence, adopted January 1, 1986. Rule 607, which abolished the voucher rule in this state for both civil and criminal cases, reads:
The credibility of a witness may be attacked by any party, including the party calling him.
Before a party calling a witness may impeach that witness, the proper predicate must be laid. See Carlisle v. State, 348 So.2d 765,, 766 (Miss. 1977). Once that is done, impeachment with prior inconsistent out-of-court statements is proper "so long as the statement made in court is one relevant to the issue in the case and therefore not collateral." Id.
It is necessary at this juncture to determine the purpose for which the statements were being offered, for "[p]rior inconsistent statements have generally been admissible for impeachment purposes but not admissible as substantive evidence." Comment, M.R.E. 801; Moffett v. State, 456 So.2d 714, 719 (Miss. 1984). If State Farm was attempting to use the prior statements "under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible ... as a device to avoid the hearsay rule," the admission of the testimony was error. Harrison v. State, 534 So.2d 175, 178 (Miss. 1988) (emphasis in original), citing U.S. v. Livingston, 816 F.2d 184, 192 (5th Cir.1987); U.S. v. Hogan, 763 F.2d 697, 702 (5th Cir.1985); U.S. v. Miller, 664 F.2d 94, 97 (5th Cir.1981), cert. denied 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982). See also U.S. v. Peterman, 841 F.2d 1474, 1479 n. 3 (10th Cir.1988); U.S. v. Webster, 734 F.2d 1191, 1192 (7th Cir.1984); U.S. v. Fay, 668 F.2d 375, 379 (8th Cir.1981); U.S. v. DeLillo, 620 F.2d 939, 946 (2d Cir.1980); Whitehurst v. Wright, 592 F.2d 834 (5th Cir.1979); U.S. v. Rogers, 549 F.2d 490, 497 (8th Cir.1976); U.S. v. Morlang, 531 F.2d 183, 190 n. 15 (4th Cir.1975).
State Farm argues that the purpose of the testimony in question was to present the jury with evidence of State Farm's state of mind for denying the claim on the issue of bad faith. Were this true, our decision on this issue might be different.
The bad faith claim and request for punitive damages was not before the court below, nor it is before us in this appeal. A close review of the record reveals no order or other documentation regarding the viability of the bad faith claim during the instant litigation. However, an examination of the testimony as a whole and jury instructions offered [and not offered] show that the bad faith claim was not being litigated. This was confirmed by both counsel during oral argument when they representated that the bad faith claim had been bifurcated and indeed, was not being litigated during the first phase of the trial. In other words, had the jury returned a verdict for the Coopers on the insurance contract during the first phase of the litigation, the question of bad faith in the denial of the claim and the possible imposition of punitive damages would have followed. Here we are concerned solely with the first phase of the litigation which concerns only the liability under the insurance contract.
An extensive and careful reading of the record as a whole, as well as the testimony of Susie Arnett during this first phase of the litigation, shows that State Farm, knowing all the while what the responses would be, offered the testimony of Susie Arnett for no other reason than to impeach her denials with the hearsay testimony of McClain, Brown and Lomenick. As such, the testimony of McClain, Brown and Lomenick was offered "under the guise of impeachment for the primary purpose of placing before the jury substantive evidence" in its case in chief which was "not otherwise admissible as a device to avoid the hearsay rule." The admission of this testimony was error.
Accordingly, on direct appeal we reverse and remand for allowing the testimony of Brown, Lominick and McClain under the guise of impeachment to avoid the hearsay rule. Because we reverse and remand on *692 these issues, we find it unnecessary to reach assignments of error III and IV regarding the burden of proof required to prove an affirmative defense of arson which, we note, is governed by McGory v. Allstate Ins. Co., 527 So.2d 632 (Miss. 1988).

CROSS APPEAL
State Farm is asking for an award of attorney fees and expenses in accordance with Rule 56(h), Mississippi Rules of Civil Procedure, in connection with their successful defense against the Cooper's Motion for Partial Summary Judgment on the issue of liability. Rule 56(h) reads:
(h) Costs to Prevailing Party When Summary Judgment Denied. If summary judgment is denied the court shall award to the prevailing party the reasonable expenses incurred in attending the hearing of the motion and may, if it finds that the motion is without reasonable cause, award attorneys' fees.
The comment to this rule states:
Subsections (b) and (h) are intended to deter abuses of the summary judgment practice. Thus, the trial court may impose sanctions for improper use of summary judgment and shall, in all cases, award expenses to the party who successfully defends against a motion for summary judgment.
The Order denying the Cooper's Motion for Partial Summary Judgment does not mention expenses nor attorney's fees. The record does not contain a transcript of the hearing held on this Motion for Partial Summary Judgment, so this Court does not know whether State Farm offered proof of reasonable expenses and attorneys' fees in connection with defending this Motion for Partial Summary Judgment.
Based on the foregoing, we find that the cross-appeal for reasonable expenses and attorneys' fees has no merit.

III.

A.
We now turn to the second appeal. This appeal deals with sanctions for alleged discovery violations. Our standard for review is "whether the trial court abused its discretion in its decision." Brown v. Arlen Management Corp., 663 F.2d 575, 580 (C.A.Tex. 1981). This Court must "decide whether the ... court could have entered the order which it did." Id. Under this standard, this Court will affirm unless there is a "`definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" Id. at 1136 and cases cited therein.

B.
The facts which give rise to this appeal follow. The Coopers filed suit on November 20, 1985. State Farm answered and propounded their first set of interrogatories, requests for production of documents and requests for admissions to the Coopers on December 12, 1985. Request for Admission numbers 10 and 11, the subject of this appeal, read:
ADMISSION REQUEST NUMBER 10:
The fire occurring on May 4, 1985 to the property in question was incendiary in origin.
ADMISSION REQUEST NUMBER 11:
The fire occurring on May 4, 1985 was started by the use of accelerants and was intentionally set.
The Coopers filed their answers to the interrogatories, request for production of documents and requests for admission on January 16, 1986. Their responses to admission requests 10 and 11 were:
ADMISSION REQUEST NUMBER 10:
RESPONSE: Plaintiffs are without sufficient knowledge, information or belief to form an opinion as to the truth of the matters asserted in Admission Request Number 10 and therefore, deny same.
ADMISSION REQUEST NUMBER 11:
RESPONSE: Plaintiffs are without sufficient knowledge, information or belief to form an opinion as to the truth of the matters asserted in Admission Request Number 11 and therefore, deny same.
*693 A pre-trial conference, which resulted in a Pre-Trial Order, was held September 16, 1986. Item seven (7) of the Pre-Trial Order reads:
7. The following is a concise summary of the ultimate facts as claimed by:
b. Defendant:
The fire of May 4, 1985, resulted from arson either by or through the request of Plaintiffs. Plaintiffs also made misrepresentations during State Farm's investigation of the fire, with the intent to deceive and mislead State Farm. These misrepresentations included (1) false claims for damages, to certain contents, caused by the fire, (2) attempted concealments and misrepresentations concerning removal of personal property before the fire, (3) attempted concealment concerning Plaintiffs' knowledge of the origin and cause of the fire, (4) attempted concealment concerning Plaintiffs' active participation in causing the arson, and (5) concealment of the identity of the individual who set the fire. For these reasons, State Farm should not be required to pay any damages to Plaintiffs.
The contested issues of fact are contained in Item 9 which read, in part:
(b) Did Plaintiffs either personally, or by directing others, intentionally set the fire that damaged their dwelling and contents on May 4, 1985?
* * * * * *
(d) Did Plaintiffs knowingly attempt to conceal the identity of the individual who set the fire in question?
* * * * * *
(f) Did Plaintiffs knowingly attempt to conceal their involvement in the origin and cause of the fire on May 4, 1985?
Item 16 reads: "counsel estimate the length of the trial will be three (3) days."
Trial began December 1, 1986, and culminated with a verdict in favor of State Farm on December 4, 1986. State Farm filed a Motion for Expenses under Rule 37, Mississippi Rules of Civil Procedure based on the denial of Admission Requests 9 through 13 on December 13, 1986.
Following a court ordered briefing schedule on the Coopers' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial, the trial court signed an Order January 30, 1987 which was entered February 6, 1987. This Order and final judgment denied the Cooper's motion and specifically reserved ruling on State Farm's Rule 37 motion "for a period of time not exceeding 45 days from entry of this Order."
The trial court denied State Farm's Rule 37 Motion by Order entered July 26, 1988, approximately 17 1/2 months after entry of the Order reserving ruling. The Order reads: "On motion of Defendant for award of attorneys fees and expenses, the Court has considered said motion, finds it is not well taken and denies same." State Farm filed its Notice of Appeal on August 23, 1988, and assigned as error the following:
Where the Coopers Wrongfully Denied Requests for Admission That Were Designed to Save the Time and Expense of Proving an Intentionally Set Fire, and Where the Coopers had No Reasonable Expectation of Prevailing on That Issue at Trial, Did the Lower Court Err in Refusing to Assess the Coopers With the Expense Incurred by State Farm in Proving Such Facts Under Rules 36(a) and 37(c), Miss.R.Civ.Proc.?

C.
The essence of this appeal is found in the following statement of State Farm: "The Coopers had no `reasonable ground' to believe that they might prevail on this issue. They knew the fire was intentionally set. The jury's verdict established the point."
State Farm contends that because "they [the Coopers] knew that the fire was willfully set," made no attempt at trial to prove otherwise, and "would not admit facts which were not genuinely disputed" State Farm was forced to introduce evidence and testimony to prove the fire was incendiary. State Farm contends that these "unwarranted denials greatly extended the length of trial, causing greater expense for the parties and unnecessary expenditure of judicial resources."
*694 State Farm argues that the denial of the admission requests by the Coopers violated Rule 36(a), Miss.R.Civ.P., thereby opening themselves up to sanctions in accordance with Rule 37(c), Miss.R.Civ.P. Additionally State Farm argues that since none of the conditions found in Rule 37(c) were established, the trial court abused its limited discretion in not awarding State Farm the expenses and attorneys fees they requested.
This appeal deals with sanctions for alleged discovery violations. The language of the rules pertinent to the discussion herein has not changed since adoption.
Inquiry into this appeal begins with the Coopers' argument that the pre-1989 Mississippi Supreme Court Rule 47, entitled Mandamus to Require Trial Court Decision, reads:
If a trial judge in a civil case fails to render an opinion, ruling or finding within six months after taking a case under advisement ...
(emphasis added). Rule 47 applies to cases taken under advisement, not motions which are taken under advisement. In the case at bar a motion was taken under advisement; Rule 47 is inapplicable.
The scope of discovery pertinent to this appeal is found in Rule 26(b), Miss.R.Civ.P. and § 13-1-226 of the Mississippi Code which read, in part:
(b) SCOPE OF DISCOVERY. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party.
State Farm's affirmative defense in the case sub judice was arson by the Coopers. An essential element of that defense was that the fire was incendiary. McGory v. Allstate Ins. Co., 527 So.2d 632, 634-35 (Miss. 1988). Request for Admissions 10 and 11 directly addressed this element of the defense.
Requests for admissions are governed by Rule 36, Miss.R.Civ.P. and § 13-1-236, which are identical. The portion of Rule 36 pertinent to this appeal reads:
(a) Request for Admission
... The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to Rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it.
The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this section, it may order either that the matter is admitted or that an amended answer be served. The court may, in lieu of these orders, determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial. Rule 37(a)(4) applies to the award of expenses incurred in relation to the motion.
(emphasis added).
The comment to Fed.R.Civ.P. Rule 36(a) indicates that there is a split of authority "on the question whether a party may base his answer on lack of information or knowledge without seeking out additional information." *695 The federal courts have adopted the majority view which requires an answering party without sufficient knowledge to answer to "inform himself in a reasonable fashion" and so state. Further, the comment states:
The rule as revised adopts the majority view, as in keeping with the basic principle of the discovery rules that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process. It has been argued against this view that one side should not have the burden of "proving" the other side's case. The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him. In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal. Even when it is not, the information may be close enough at hand to be "readily obtainable." Rule 36 requires only that the party state that he has taken these steps. The sanction fora failure of a party to inform himself before he answers lies in the award of costs after trial, as provided in Rule 37(c).

(emphasis added). See also 8 Wright & Miller, Federal Practice & Procedure: Civil § 2261 at 730 (1970). This is the majority view.
This Court has said that "Rule 36 is to be enforced according to its terms." Educational Placement Services v. Wilson, 487 So.2d 1316, 1318 (Miss. 1986). The Coopers' responses to admission requests 10 and 11 specifically deny the statements in addition to stating lack of "sufficient knowledge, information or belief to form an opinion as to the truth of the matters asserted."
Sanctions for failure to admit in accordance with Rule 36, and the procedure for obtaining those sanctions, are governed by Rule 37(c), Miss.R.Civ.P., § 13-1-237(c) and Fed.R.Civ.P. Rule 37(c) which are identical.
Rule 37(c) is the exclusive remedy for violations of the admissions procedure of Rule 36. 8 Wright & Miller, Federal Practice & Procedure: Civil § 2290 at 801 (1970). Rule 37(c) reads:
(c) Expenses on Failure to Admit. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable under Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.
(emphasis added).
Rule 37(c) is an exception to the general rule that Rule 37 sanctions are imposed following violation of a court order. See Dorey v. Dorey, 609 F.2d 1128, 1135 (5th Cir.1980) and citations therein. The proper procedure for obtaining sanctions under Rule 37(c) is found in the comment to Federal Rule 37(c), which reads, in part:
Rule 37(c) provides a sanction for the enforcement of Rule 36 dealing with requests for admission... . Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial.
* * * * * *
Additional provisions in Rule 37(c) protect a party from having to pay expenses if the request for admission was held objectionable under Rule 36(a) or if the party failing to admit had reasonable ground to believe that he might prevail on the matter. The latter provision emphasizes that the true test under Rule *696 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail.
(emphasis added). "Rule 37(c) clearly contemplates a motion after trial, and indeed a motion for sanctions prior to that time would be premature, since the party must have proved the genuineness of the document or the truth of the matter involved before he can move for sanctions." 8 Wright & Miller, Federal Practice & Procedure: Civil § 2290 at 803 n. 83 (1970).
Accordingly, State Farm was not required to take any action regarding the Coopers' admissions prior to the conclusion of the trial.

D.
Sanctions under Rule 37(c) are to be awarded if the party to whom the admissions request was directed could have, by reasonable inquiry, obtained information sufficient to admit or deny the request but failed to do so. See discussion immediately preceding; 8 Wright & Miller, Federal Practice & Procedure: Civil § 2290 at 805-06 (1970). The mandatory language of Rule 37(c) requires the trial court "to make the award of expenses and fees to a party who comes within Rule 37(c) unless it finds that one of four specified conditions exists." 8 Wright & Miller, Federal Practice & Procedure: Civil § 2290 at 804 (1970). If the trial court fails to make the appropriate findings error has occurred and remand is necessary. McKnight v. Akins, 192 F.2d 674, 676 (C.A. 6th, 1951).
In accordance with the foregoing authority, the trial court below was required to state with particularity the reasons for denying State Farm's Motion for Rule 37(c) sanctions. The trial court's failure to comply with that requirement was error. However, after a careful examination of the record and keeping in mind our standard of review, we find that the court could have entered the order which it did and any error that occurred was harmless beyond a reasonable doubt.
We do not believe that Rule 37(c) contemplates sanctions under circumstances where, as here, the requests for admissions are, in effect, an accusation of the act of arson on the part of the party to whom the admissions are sought, and are denied. It is hard to fathom that any plaintiff would be expected to answer more fully than to deny an accusation of arson or be subjected to sanctions. Accordingly, we find that the trial court did not err in failing to award sanctions for discovery violations.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., SULLIVAN, PITTMAN and BLASS, JJ., concur.
ROBERTSON, J., dissents by separate written opinion, joined by PRATHER and ANDERSON, JJ.
ROBERTSON, Justice, dissenting:

I.
It seems to my mind better to decide this case by conventional appellate process: taking the facts, the record, and the proceedings below as they are given us and thereafter applying settled evidentiary and appellate procedural law. We should not import bifurcation of plaintiffs' claims for trial where the record does not show such. Moreover, a permitted practice is not pretermitted by reason of the author's state of mind. The majority predicates reversal on a course of proceedings not in the record, thereafter imputing motives counsel stoutly denies. The majority's suggestion smacks of subjective standards in an area governed (and best governable) by objective ones. In my view, the judgment below may only be affirmed.

II.
The Court holds that the Circuit Court erred in its handling of State Farm's witnesses, [Donald] Donnie (Donny) Brown, Harold Lomenick, and Harvey McClain. The majority opinion recites the facts and course of proceedings regarding the testimony of these witnesses with accuracy and clarity, but with one major exception. At the time of these trial happenings, the Coopers had before the Court an active bad *697 faith refusal claim wherein they were demanding $754,000 in punitive damages.[1]
Faithful application of our rules of evidence make clear the admissibility of Brown's, Lomenick's and McClain's, testimony on at least two grounds: (a) as impeachment of Susie Arnett, the sister of the plaintiff Faye Cooper,[2] and, (b) as evidence going to whether State Farm had an arguable reason for denying Coopers' claim and, ultimately, whether State Farm should be assessed punitive damages. Each point requires explication.

A. Impeachment

1. The Facts
On the third day of trial, State Farm called Susie Arnett as a witness. On direct examination Arnett denied (1) that Faye Cooper had told her they (the Coopers) had their house burned; (2) that the Coopers had burned their own house; (3) that the Coopers knew in advance that their house would be burned or how they "went about having their house burned"; (4) and that she made a telephone call to State Farm Agents Brown or Lomenick and told them of Faye Cooper's bragging about burning the house and what they were going to do with the money, although Arnett did admit talking to Brown and Lomenick in relation to her own insurance and to McClain regarding the Coopers' fire, only she urged State Farm to go ahead and pay the Coopers' claim.
State Farm subsequently called as witnesses its investigator, Harvey McClain, and agents Brown and Lomenick. Brown testified, over objection, that he received a telephone call July 1, 1985, from a female identifying herself as Faye Cooper's sister who told him she was tired of hearing the Coopers brag about how they had burned their house and how they were going to spend State Farm's money. At this point in the conversation Lomenick entered the room, got on the line with Brown. Brown admitted that he did not know who the caller was.
Lomenick corroborated Brown's testimony regarding the female caller. Lomenick got the woman's telephone number, pulled out his telephone book and verified that the number was assigned to a William Arnett and reported this information to the investigator, McClain. Lomenick said he received another telephone call from the same woman ten days prior to trial and, while he did not know Susie Arnett, he had heard Arnett's voice during the trial and it sounded *698 similar to the telephone voice. See Rule 901(b)(5), Miss.R.Ev.; Middlebrook v. State, 555 So.2d 1009, 1011-12 (Miss. 1990); Gray v. State, 549 So.2d 1316, 1319 (Miss. 1989).
McClain learned of the telephone call from Lomenick and called the number Lomenick gave him. The person who answered his call identified herself as Susie Arnett, acknowledged that she had talked with Brown and Lomenick regarding the fire, and requested that he go ahead and pay the Coopers.
Today's majority holds the Circuit Court erred when it allowed this testimony from Brown, Lomenick and McClain.

2. The Uncontroverted
The majority begins harmlessly enough, noting State Farm's prerogative to attack the credibility of Susie Arnett, notwithstanding it had called her as a witness. Rule 607, Miss.R.Ev. Next, and again correctly, the majority accepts that the subject matter of the prior inconsistent out-of-court statements went to a central issue in the case, whether the Coopers intentionally burned their home or had it intentionally burned. No one suggests this offends our rule against impeachment on a collateral matter. See, e.g., White v. State, 532 So.2d 1207, 1217 (Miss. 1988); Price v. Simpson, 205 So.2d 642, 643 (Miss. 1968).
The majority follows with a third rule to which there can be no exception: Prior inconsistent statements, such as those here at issue, are admissible for impeachment purposes, but not as substantive evidence. They are admissible to cast doubt upon the credibility of a witness on a critical issue, but not as substantive proof of the matter asserted. See Official Comment to Rule 801, Miss.R.Ev.; Jordan v. State, 513 So.2d 574, 581 (Miss. 1987); Foster v. State, 508 So.2d 1111, 1119 (Miss. 1987); Moffett v. State, 456 So.2d 714, 719 (Miss. 1984). The Court correctly instructed the Coopers' jury to this effect.
There is the matter of double hearsay. Brown, Lomenick and McClain were asked what Arnett said about what Faye Cooper had said. Rule 805, Miss.R.Ev., declares
Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.
Of course, what Faye Cooper said to Arnett is an admission and admissible as such. Rule 801(d)(2)(A), Miss.R.Ev. To my mind, what Brown, Lomenick and McClain said Arnett said is then admissible as a prior inconsistent statement, a proper form of impeachment. Rule 613, Miss.R.Ev.

3. The Controverted
From this point, the majority engages in a flight of fancy regarding State Farm's "primary purpose" in presenting the impeachment evidence and falls into fallacy. What rules permit is not made impermissible by a covered actor's motive. See, e.g., Avery v. State, 555 So.2d 1039, 1042 (Miss. 1990). No litigant intentionally offers evidence not designed to advance his cause or deter his adversary's. He always hopes to harm his opponent. The occasions are legion where a party employs a rule to some tactical end never thought to justify the rule. If we are about to embark on a course of limiting counsel's motives, we are biting off quite a bit. Beyond this, we are about to distort the trial practice from what it has long been, and without perceived inconvenience. Disregarding these realities, today's majority finds that State Farm's purpose was to put before the jury substantive evidence not otherwise admissible and predicates reversal on this finding. The majority indulges in the factually dubious and legally impermissible.
The stage need be set. In opening statement, counsel for State Farm announced he would call Susie Arnett and told the jury how he hoped she would testify.[3] When *699 time came to present its case, State Farm then called Arnett and through her, sought to elicit evidence that the Coopers burned their house. If Susie Arnett had testified that Faye Cooper told her they burned their house down, this would have been an admission by party opponent. Rule 801(d)(2)(A), Miss.R.Ev. Because State Farm had an objectively reasonable basis for believing Arnett may testify to this effect, it had the right to call her and ask the question. For State Farm this is a gamble tactically worth taking. If Arnett admits she made the call, then State Farm has more evidence, an admission in fact, that the Coopers burned their house. If Arnett fails to say what she had said before, at worst State Farm is disappointed though hardly seriously damaged  Arnett's credibility was an issue in the case only if State Farm chose to make it one. Besides, no one would be shocked that Arnett refused to testify in a manner harmful to her sister. More likely, State Farm can call its agents to show an "arguable reason" in defense of the bad faith refusal claim, and, coincidentally, to discredit Arnett.
It is certainly true that Arnett admitted to the investigator that she had phoned the State Farm office but refused to give a recorded statement. State Farm was on notice that Arnett may waffle. At the time she contradicted her prior statements, Arnett was not under oath. I see no reason why State Farm was not of right entitled to rely on the coercive effect of the penalties for perjury to produce truthful testimony from Arnett. The law demands but one ticket of a party who would pursue such a point: an objectively good faith belief that the witness will testify as proffered. Lanier v. State, 533 So.2d 473, 487 (Miss. 1988).
In answer, the majority relies on a sentence of dicta from Harrison v. State, 534 So.2d 175, 178 (Miss. 1988), taken out of context. I read Harrison to be wholly consistent with affirmance today. In Harrison, the prosecution called Ray Lee Patty and then proceeded to ask him about statements allegedly made to a police officer the day after the murder was committed. Patty had been with the defendant but did not witness the murder. It would appear from the defendant's objection the prosecution knew the witness was going to testify adversely to the prosecution's wishes. Harrison nevertheless held Rule 613(b) allowed the prosecution to call the police officer to the stand to testify to the prior inconsistent statements. That is what  and all  State Farm did here.
Brown v. State, 556 So.2d 338, 341 (Miss. 1990) is not to the contrary. Nothing said there questions admissibility of the prior inconsistent statements. Rather, Brown re-emphasizes that these may serve only to impeach and may not be considered as substantive evidence when the evidence is tested for its sufficiency to support a jury verdict.
It's not that our rulemakers did not think of what (I think) bothers the majority. Rule 403, Miss.R.Ev., provides that evidence, otherwise admissible
may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ...
*700 The rule reaches the effect of disputed evidence, not counsel's intent in offering it.
This premise has been recognized by the leading treatise in the field.
Instead of placing so much emphasis on the motive of the profferor, an approach more consistent with the underlying policy of the Federal Rules of Evidence would be to analyse the problem in terms of Rule 403  is the probative value of the impeaching evidence outweighed by its prejudicial impact?
3 Weinstein's Evidence, ¶ 607[01], p. 607-20 (1988).
We have held Rule 403 the "ultimate filter through which all otherwise admissible evidence must pass." Ford v. State, 555 So.2d 691, 693 (Miss. 1989), quoting Jenkins v. State, 507 So.2d 89, 93 (Miss. 1987). Rule 403 applies to evidence relevant only to the credibility of a witness, as well as evidence substantively relevant. Foster v. State, 508 So.2d 1111, 1119 (Miss. 1987) (citing Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir.1983)); See also, Shearer v. State, 423 So.2d 824, 826 (Miss. 1982). What is fundamental is that Rule 403's filter finds its form as an objective standard  whether probative value is substantially outweighed by prejudice, etc.  eschewing the illicit subjective world into which the majority would lead us. On this record I see no basis for saying the Circuit Court abused its Rule 403 discretion regarding the issue at bar.
I certainly concede another viable perspective on this matter. The Circuit Court was not bound to rule as it did. Imagine that counsel for State Farm had said nothing of Susie Arnett in opening statement and State Farm had called Arnett as a witness and asked her whether she had called State Farm's office and made the statements attributed to her, and then received Arnett's denial. No doubt, at that point State Farm would have been disappointed, but many a litigant has called a witness only to have the witness testify other than anticipated, and thus to be disappointed. At that moment, State Farm's case had hardly suffered a fatal blow, nor had Arnett's credibility become such a central issue that impeachment was imperative. In some such cases, allowing counsel to proceed with the sort of impeachment allowed here produces the danger of unfair prejudice substantially outweighing the probative value the evidence may bear (on the issue of the credibility of the prior witness). The unfair prejudice may arise in part from the acknowledged inability of many lay jurors, though properly instructed, to distinguish between evidence admitted as substantive proof from evidence admitted for impeachment purposes only.[4]See Moffett v. State, 456 So.2d at 720. In such circumstances, the Circuit Court in its discretion may employ Rule 403 and deny the impeachment.
Nothing I say here suggests I would have considered it error if the Circuit Court had invoked its discretionary authority under Rule 403 and held the impeachment testimony of Brown, Lomenick and McClain inadmissible. I say only that the predicate offered here  Arnett's admission that she did call State Farm and discuss the Coopers' claim, although otherwise denying the contents of the call as remembered by State Farm, coupled with the convincing testimony of three State Farm witnesses: *701 Brown, Lomenick and McClain  leaves me with the view that the Court remained within the contours Rule 403 has wrapped around its authority when it allowed the impeachment testimony. See generally, Stringer v. State, 548 So.2d 125, 133-34 (Miss. 1989); May v. State, 524 So.2d 957, 965 (Miss. 1988); Haynes v. State, 520 So.2d 1367, 1369 (Miss. 1988).

B. Substantive Evidence of State Farm's Arguable Reason for Refusal to Pay the Coopers' Claim
Independent of the foregoing, the evidence at issue was admissible regarding State Farm's defense of the Coopers' bad faith refusal claim wherein the Coopers demanded punitive damages.
On September 26, 1986, the Coopers filed their amended complaint, asserting their bad faith refusal claim. State Farm thereafter moved for summary judgment on the issue of punitive damages. The Circuit Court never ruled on the motion and, in fact, the issue was legally alive at the time Brown, Lomenick and McClain testified. It is certainly true that the parties spent little time on the bad faith/punitive damages claim at trial, yet the claim had not been removed from the case.[5] Had the Coopers offered substantial evidence in support of that claim, and had it been excluded, we would reverse. By the same token, State Farm was entitled to offer proof in defense that it had an arguable reason for denying the Coopers' claim. The testimony of Brown, Lomenick, and McClain regarding the statements made by Susie Arnett were admissible on the issue of whether State Farm had an arguable reason to deny the Coopers' claim. See Cossitt v. Federated Guaranty Mutual Insurance Co., 541 So.2d 436, 443 (Miss. 1989); Pioneer Life Insurance Co. of Illinois v. Moss, 513 So.2d 927, 929 (Miss. 1987).
In this context the testimony of Brown, Lomenick and McClain was not hearsay. Rule 801(c), Miss.R.Ev. provides:
"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
But this testimony was not offered to that end, only to show the fact of the call and State Farm's state of mind. "If the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay." Comment 801, Miss.R.Ev.
McCormick on Evidence, 3d ed. § 249, declares:
The hearsay rule forbids evidence of out-of-court assertions to prove the facts asserted in them. If a statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay. Utterances and writings offered to show effect on hearer or reader, when it is proved that "D" made a statement to "X" for the purpose of showing the probable state of mind thereby induced in "X", such as being put on notice or having knowledge or motive or to show the information which "X" had, has bearing on the reasonableness or good faith or voluntariness of subsequent conduct of "X" or anxiety, the evidence is not subject to attack as hearsay... .
In our present context, the truth of Arnett's statement is unimportant, but her statement may be seen to have an effect on the state of mind of those hearing it little short of enormous. The statement could be completely false, but the fact that someone told State Farm this makes its actions understandable, its refusal to pay the Coopers arguable.
In State Farm Fire and Cas. Co. v. Simpson, 477 So.2d 242, 251 (Miss. 1985) this court sensibly said that hearsay could be considered by an insurance company in denying a claim, although it would not be admissible at trial to prove the arson. I see nothing in the Mississippi Rules of Evidence that alters this view.
American Mfrs. Mut. Ins. Co. v. Cupstid, 673 F. Supp. 186 (S.D.Miss. 1987) followed *702 Simpson,[6] holding that, although the statements in the case were "not admissible on the issue of whether the Cupstids were responsible for the fire ..., [the insurance company] could ... consider it in deciding whether to pay the claim." Cupstid, 673 F. Supp. at 190 n. 3. I find unassailable the logic of Cupstid and the authority of Simpson. A call such as that received by Brown and Lomenick  coupled with the evidence of an incendiary fire  more than gave State Farm an arguable reason for refusing the Coopers' claim. General rules of evidence allow such testimony to show the fact that the call was made, if not to prove the truth of what was stated. The Circuit Court was correct in overruling the Coopers' objections.

III.
I find no error in the proceedings below. I would affirm the judgment of the Circuit Court. Because the majority holds otherwise, I respectfully dissent.
PRATHER and ANDERSON, JJ., join in this dissent.
NOTES
[1] Defendant State Farm moved for partial summary judgment. The record is silent regarding any ruling thereon by the Circuit Court. At oral argument counsel for the Coopers said he believed the Circuit Court ordered a bifurcated trial. Counsel for State Farm said only that the Circuit Court restricted the Coopers from going into the monetary worth of State Farm in their case-in-chief, a point no doubt flowing from Rule 104(b), Miss.R.Ev., and hardly helping the Coopers here. As appellants, the Coopers were obligated to present a record of the trial sufficient to show the error they say has occurred, and further, that the error was timely and properly preserved. See, e.g., Doby v. State, 557 So.2d 533, 536 n. 2 (Miss. 1990); Queen v. Queen, 551 So.2d 197, 199 (Miss. 1989); Peterson v. State, 518 So.2d 632, 638 (Miss. 1987); Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973). To the point, accepted notions of appellate practice obliged the Coopers that they show in the record whence their bad faith claim became removed from trial. The Circuit Court certainly had the authority to bifurcate the Coopers' bad faith, punitive damages claim from the trial of the other claims the Coopers asserted, See Rule 42(b), Miss.R.Civ.P.; Nationwide Mutual Insurance Company v. Evans, 553 So.2d 1117, 1119 (Miss. 1989); South Carolina Insurance Company v. McKenzie, 547 So.2d 25, 27 (Miss. 1989); State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242, 254 (Miss. 1985), but nothing in the record reflects that it did so.

We have said repeatedly that we decide cases upon the matters contained in the record, and not unsupported assertions in the briefs of the parties. See Magee v. Transcontinental Gas Pipeline Corp., 551 So.2d 182, 186 (Miss. 1989); Burney v. State, 515 So.2d 1154, 1160 (Miss. 1987); Mason v. State, 440 So.2d 318, 319 (Miss. 1983). If we are not going to rely upon what counsel say in briefs, we are certainly not going to credit unsupported statements in an argument, particularly where the parties disagree as here. In short, the reason we should not credit the Coopers' claim that the bad faith claim had been bifurcated is purely and simply that nothing in the record supports that assertion, nor is there an agreement from counsel that the claim was bifurcated.
[2] If ground (a) were the only basis State Farm offered in support of admissibility, the point would be much closer, as I will explain below.
[3] I consider that State Farm's counsel took a calculated risk when he told the court and jury:

State Farm's agents at that time, Mr. Lomenick and Donny Brown shared an office. One day shortly after this while this investigation was going on Donnie Brown gets a phone call from a woman who says, "I'm Faye Cooper's sister and I am sick to death of hearing her bragging about how they burned her house down and how they are going to collect on their insurance money and all the wonderful things they are going to do when they collect" and Donny says, Whoa, I'd better get somebody else to listen to this so he calls Harold Lomenick, his friend, was right next door, so he says, Harold come listen to this. So Harold gets on the phone and introduces himself and this lady repeats everything that she said and identifies herself as Susie Arnett. As it turns out, yes, Faye Cooper does have a sister named Susie Arnett and she gave Mr. Lomenick and Mr. Brown the telephone number and as it turns out that is the number to call to speak to Susie Arnett. Now, I don't know, ladies and gentlemen, whether Mrs. Arnett will come and admit all these things to you in this trial, she may or she may not, she is the sister of the Plaintiff, Faye Cooper and it will be understandable that she might be hesitant to repeat that kind of fact here in front of everybody and in the presence of her own family. She might not be willing to do that, I just don't know, only Mrs. Arnett knows what she is going to do about that but this is the sort of facts that became available to State Farm when they were investigating this claim....
State Farm gains no advantage on the present point from the fact that counsel had thus led with his chin.
[4] Anomaly attends our rule. Testimony such as that here at issue is admissible (if at all) as impeachment and not as substantive evidence. It is difficult enough for the legal mind to keep distinct these categories of evidence, and we know it is next to impossible that the lay mind distinguish them. We indulge in the fiction that an instruction is adequate and that the jury will understand and follow the instruction. We compound the felony by the rule that impeachment is not allowed on a collateral issue. What this means, of course, is that to be admissible impeachment must relate to an issue generally at the core of the case.

Impeachment challenges the credibility of a witness. Common sense suggests it a safer course if this challenge be made through means that truly implicate the credibility of the witness but which at once accepts the juror's propensity to misunderstand, if not ignore, the substantive evidence/impeachment distinction. This safer course is marked off by the rule prohibiting impeachment on a collateral issue, a rule that serves to maximize the mischief that may result, suggesting to my mind that the day must surely come when we will rethink this entire matter.
[5] See footnote 1, supra.
[6] The Cupstid court was bound by Rule 801 of the Federal Rules of Evidence which is identical to the Mississippi rule.