## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CA-01257-SCT

*M. C. ROGERS AND ABE LAUDERMILK*

*v.*

*OKTIBBEHA COUNTY BOARD OF SUPERVISORS AND CECIL HAMILTON, PRESIDENT*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/1998 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | NANCY H. STUART |
| ATTORNEY FOR APPELLEES: | H. RUSSELL ROGERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/07/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/28/99 |

## EN BANC.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. M.C. Rogers and Abraham Laudermilk were sued by Oktibbeha County in separate actions in the Oktibbeha County Justice Court, where demand was made for judgments against them in the sums of $307.25 and $326.75 respectively, for the "unpaid balance due for the collection of household garbage." Following adverse judgments by the Justice Court, each landowner filed a Notice of Appeal in the Oktibbeha County Circuit Court. The Circuit Court judge consolidated the two cases, conducted a *de novo* bench trial, and ruled in favor of Oktibbeha County, finding that Rogers and Laudermilk must pay. In this case of first impression in Mississippi, this Court affirms the judgment of the Oktibbeha County Circuit Court.

### STATEMENT OF THE FACTS

¶2. In September, 1993, Oktibbeha County initiated curbside collection and disposal of garbage pursuant to Miss. Code Ann. § 19-5-17 (1995), which became effective in 1992. Pursuant to the statutory authority, Oktibbeha County assessed a garbage fee in the amount of $9.75 per month for each residence. Rogers and Laudermilk chose not to pay from the inception of the program. Each lived in rural Oktibbeha County and disposed of all his household garbage and rubbish on his own land. They did not need, did not want, and did not use the county collection and disposal services. Nevertheless, they were billed each month by the county. When they refused to pay, Oktibbeha County filed suit seeking the unpaid fees.

¶3. The facts available from the record before the Court are sparse. The transcript of the bench trial consists of only twenty pages of testimony, and no exhibits were introduced in support of testimony of either side. The testimony of Rogers and Laudermilk paints a picture of a simple rural life. They consume little, waste little, recycle, and dispose of the very little that is left, often by burning it with rubbish on their land. Laudermilk testified that he needed the ashes for his plum trees.

¶4. The only other witness called was the president of the Oktibbeha County Board of Supervisors, who actually was called by counsel for the landowners but was not considered as an adverse witness. The essence of his testimony was that there had been no complaints from any individuals or authorities concerning the property of Rogers or Laudermilk; that he did not have any information which showed that either Rogers or Laudermilk caused Oktibbeha County to collect or dispose of any of their garbage or rubbish at any time; and that the Board does not allow any exemption from the monthly payments for anyone.

¶5. On July 21, 1998, the circuit judge ruled in favor Oktibbeha County and ordered Rogers and Laudermilk to pay the user fee. Aggrieved by the judge's ruling, Rogers and Laudermilk appealed to this Court, raising the following issue:

**Whether Rogers and Laudermilk together with all other resident citizens of**

**Oktibbeha County are required to pay for the cost of residential solid waste**

**collection/disposal, regardless of use.**

## ANALYSIS

¶6. Oktibbeha County established its garbage disposal system pursuant to Section 19-5-17, of the Mississippi Code of 1972 which reads in pertinent part:

. . . the board of supervisors of any county in the state shall provide for the collection and disposal of garbage and the disposal of rubbish, and for that purpose is required to establish, operate and maintain a garbage and/or rubbish disposal system or systems . . . and, if it so desires, to establish, maintain and collect rates, fees and charges for collecting and disposing of such garbage and/or rubbish . . . **All persons in the county generating garbage shall utilize a garbage collection and disposal system**. . . .

. . . . the board of supervisors of such county shall have the authority to initiate a civil action to recover any delinquent fees and charges for collecting and disposing of such garbage and/or rubbish . . . .

Miss. Code Ann. § 19-5-17 (1995) (emphasis added).

¶7. Section 19-5-21(2) also gives counties the authority to assess and collect fees for its garbage disposal system. It reads is pertinent part:

In addition to or in lieu of any other method authorized to defray the cost of establishing and operating the system provided for in Section 19-5-17, the board of supervisors of any county that has established a garbage and/or rubbish collection and/or disposal system may assess and collect fees or charges to defray the costs of such services. The board of supervisors may assess and collect the fees

or charges from each single family residential generator of garbage and/or rubbish. . . .

Miss. Code Ann. §19-5-21(2)(1995).

¶8. Rogers and Laudermilk are clearly "generators of garbage" for purposes of the above cited statute. Their testimony at trial absolutely establishes this fact:

Question: But you generate some garbage?

Mr. Rogers: It be something like a paper sack or newspapers they leave in the box that I don't need.

Question: Do you burn it?

Mr. Rogers: I take it and burn it.

. . . .

Question: What do you do with the cans and the plastic wrappers and that type of thing that come off the food you buy? Where do you put those?

Mr. Rogers: I put it in there and I burn it with the rest of the paper.

¶9. The cross-examination of Laudermilk was as follows in part:

Question: And what do you do with the milk cartons and the bread wrappers and the butter wrappers when you get through using the food?

Mr. Laudermilk: Well, there's so much of it. Sometimes there's a butter carton a month. . . .

¶10. It is clear from the record that both of them generated, produced, manufactured and created garbage. Therefore, under sections 19-5-17 and 19-5-21(2) both Rogers and Laudermilk are required to utilize the county's garbage collection and disposal system and pay the requisite fees.

¶11. Rogers and Laudermilk contend that they do not have to use the county's garbage disposal system because they are exempt under section 17-17-13 which reads in pertinent part: "Nothing in this chapter shall prevent an individual or firm from disposing of solid waste from his own household or business upon his own land . . . ." Miss. Code Ann. § 17-17-13 (1995). However, Rogers and Laudermilk overlook the fact that section 17-17-13 applies only to garbage disposal systems established under Title 17, known as the "Solid Wastes Disposal Law of 1974." The exemption applies only to "this chapter" (i.e. the "Solid Wastes Disposal Law" under Title 17 not Title 19). Oktibbeha county established its garbage disposal system pursuant to section 19-5-17, and, as such, the authority given to the county to assess and collect fees is also governed by statutes under Title 19.

¶12. Indeed, Title 19 possesses its own "exemption" provision. Section 19-5-21(5) as applicable when this action arose, does allow counties to adopt an order authorizing residents living in unincorporated areas to elect not to use the county garbage system, provided they file a request with the chancery clerk. That statute reads in pertinent part:

The board of supervisors in any county that has established a garbage and/or rubbish collection and/or disposal system only for residents in unincorporated areas may adopt an order authorizing any

single family generator to elect not to use the county garbage and/or rubbish collection and/or disposal system. If the board of supervisors adopts such order, **the head of any single family residential generator may elect not to use the county garbage . . . service by filing with the chancery clerk the form provided for in this subsection . . . .**

Miss. Code Ann. § 19-5-21(5)(1995 & Supp. 1999) (emphasis added).

¶13. The record absolutely establishes that neither Rogers nor Laudermilk filed the requisite forms requesting that they be exempted from the county's garbage disposal system. Rogers and Laudermilk raise the issue of whether the county had adopted an exemption policy. The record shows that it had not. This point, however, is immaterial in light of the fact just mentioned-neither Rogers nor Laudermilk attempted to achieve exemption status pursuant to Section 19-5-21(5). Further, the exemption is discretionary with the county, not mandatory. Therefore, Rogers and Laudermilk were under a statutory obligation to pay the fees assessed by the county for its garbage disposal system.

¶14. The statutory language governing this case is clear, and the facts fall squarely within the purview of the applicable statutes. Oktibbeha County adopted a garbage disposal system pursuant to Section 19-5-17. Rogers and Laudermilk, residents of Oktibbeha County, generated garbage which they themselves disposed, choosing not to utilize the county's system. Neither Rogers nor Laudermilk paid the fees assessed by the county. Therefore, both remained under a legal obligation to pay the garbage disposal fees assessed by the county. Neither paid. The trial court correctly ruled in favor of the county and ordered that both Rogers and Laudermilk pay the garbage disposal fees. The judgment is affirmed.

¶15. **AFFIRMED.**

> **PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., NOT PARTICIPATING. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**
>
> **COBB, JUSTICE, DISSENTING:**

¶16. I respectfully dissent. The majority begins its analysis by reviewing Miss. Code Ann. § 19-5-17(1995), and concluding that both Rogers and Laudermilk "...are required to utilize the county's garbage collection and disposal system..." (Maj. Op. at 5). However, a careful reading of Section 19-5-17 reveals that section only requires that "...all persons in the county generating garbage *shall utilize a garbage collection and disposal system*..." (emphasis added) It clearly does not require that persons must utilize only the county's garbage collection and disposal system. Absent such requirement, Rogers and Laudermilk each may lawfully dispose of garbage on his own land, pursuant to Miss. Code Ann. § 17-17-13 (1995), which states as follows:

> Nothing in this chapter shall prevent an individual or firm from disposing of solid waste from his own household or business upon his own land, provided such wastes are not hazardous as defined in section 17-17-33(i) and provided such household or business is located and situated in the State of Mississippi.
>
> Provided, however, this exemption shall not operate to prevent the conduct of any waste disposal site investigation or inventory required by applicable state or federal law, rule or regulation, and further

shall not operate to exclude from the regulatory provisions of the Mississippi Solid Waste Disposal Law of 1974, as amended, any solid waste determined by the department [Mississippi Department of Environmental Quality] to have characteristics that constitute an endangerment to the environment or the public health, safety or welfare, or any site used for the disposal of such solid waste.

I respectfully disagree with the majority's limited interpretation of this section, which states "... that Section 17-17-13 applies only to garbage disposal systems established under Title 17..." (Maj. Op. at 5). Actually, Section 17-17-13 states the general law that a person may dispose of non-hazardous solid waste from his own household or business on his own land, and includes a specific statement that nothing in Title 17, Chapter 17 prevents him from doing so. Further, my research reveals nothing in Title 19 nor in any other Title in the Mississippi Code which prevents a landowner from disposing of his own household non-hazardous waste on his own land.

¶17. The majority then points out that there is provision made in Title 19 for exemptions, referring to Miss. Code Ann. § 19-5-21(5)(1995 & Supp. 1999) which states that the Board of Supervisors "...may adopt an order authorizing any single family generator to elect not to use the county garbage and/or rubbish collection and/or disposal system", and sets forth procedures for developing a form on which to declare intent not to use the service, for publication of notice, for maintaining lists, etc. There was no evidence, documentary or otherwise, presented in the trial court regarding any official action of the board as to a policy on exemptions. The Board Attorney did, however, infer that an exemption could be obtained, as shown in his cross examination of Laudermilk:

Q. Have you ever made an application to the county to exempt you from the garbage collection?

A. No, but I've talked to every one of these jokers.

Q. But you've never filed an application with the county?

A. Where would you get one?

Q. Have you ever filed an application with the county to exempt yourself from the garbage user fees?

A. I haven't found any place to get an application.

Q. Have you ever filed one?

A. No.

¶18. After discussion of the exemption issue, the majority summarily concludes that "Rogers and Laudermilk were under a statutory obligation to pay the fees assessed by the county for its garbage disposal system." (Maj.Op. at 6). It is my belief, however, that further examination of this issue is critical to the proper resolution of this case. "A board of supervisors can only act as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did." *Smith v. Board of Supervisors*, 124 Miss. 36, 41, 86 So. 707, 709 (1921); *see also Myers v. Blair*, 611 So. 2d 969, 972 (Miss. 1992). At a minimum the Board's minutes on this issue, if any, must be included to properly develop this issue.

¶19. Being unconvinced by the majority's analysis, I suggest that the following analysis of additional

language found in Title 19, Chapter 5, at least raises questions about, if not completely vitiates, the majority's conclusion.

¶20. First, in Miss. Code Ann. § 19-5-17 (1995), we find the language which governs the establishment and maintenance of the overall garbage and rubbish disposal system and provides for collection of fees and charges . In that one section alone, the phrase "...such *fees and charges for collecting and disposing of garbage and/or*[1] *rubbish...*" appears five (5) times (emphasis added). The plain language of the statute states that the authority to collect fees and charges is for the "collecting and disposal", not just for a system which exists. The testimony of all three witnesses who appeared in the trial court (Rogers, Laudermilk, and the president of the Oktibbeha County Board of Supervisors) clearly and unequivocally reflects that no "collecting or disposing of garbage and/or rubbish" has been done at the residences of either Rogers or Laudermilk since the inception of the Oktibbeha County system.

¶21. Nowhere in any statute does it state affirmatively that a county shall (or even may) collect a fee regardless of whether its residents use the services. However, Miss. Code Ann. § 19-5-21(1) (1995) does give the board of supervisors the option of levying an ad valorem tax rather than a user fee, which would then assure that all county property owners would pay, regardless of use. But Oktibbeha County chose not to levy a tax. Now the county seems to confuse fees with taxes, arguing in its brief that the garbage collection fee is analogous to the "ad valorem assessment [tax] needed to operate the county library ....recreational facilities, beaver eradication programs and many other services made available by the county to its citizens." The county further stated: "[c]ertainly this Court would not allow someone to come forward and claim to be exempt from the ad valorem assessment needed to operate the county library system based upon an assertion that they never set foot in the library but rather order their books from a mail order book club." To that, I would agree. However, there is sufficient distinction between user fees and taxes to discount the county's position on this issue.

¶22. Second, also in Section 19-5-17 (1995), *supra*, after providing for the establishment of the collection and disposal system, the following statement is made: "[a]ll persons in the county *generating garbage* shall utilize a garbage collection and disposal system." (emphasis added). This clearly implies that there will be some persons in the county who will not be generating garbage, as is the case with Rogers and Laudermilk. Otherwise, the sentence would simply read "[a]ll persons in the county shall utilize ...."

¶23. "Generator" and derivatives thereof are common terms found woven throughout numerous and varied state and federal statutes pertaining to disposal of various types of waste, and often the definition section of the particular chapter or title contains a specific definition. Unfortunately, our legislature did not include a definition of the word or any derivative of the word "generator" in Title 19, nor in Title 17 on solid waste disposal. Apparently the only place the word "generator"( in the context of waste disposal and pollution control) is defined in the Mississippi Code is in section 49-31-9, the definition section for the Mississippi Multimedia Pollution Prevention Act, Miss. Code Ann. § § 49-31-1 to 25 (1999). Because it governs similar subject matter, it is instructive. It reads in pertinent part:

> § 49-31-9. Definitions.
>
> For purposes of this act the following terms shall have the meanings ascribed to them in this section or in Section 17-17-3 unless the context clearly indicates otherwise:
>
> * * *

(d) *"Generator" means any person whose act or process produces waste.*

\* \* \*

(j) *"Waste" means* sewage, industrial wastes, oil field wastes, and all other liquid, gaseous, *solid or other substances which may pollute the lands, waters or air of the state.*

Miss. Code Ann. § 49-31-9 (1999) (emphasis added). If Rogers and Laudermilk lawfully dispose of all solid substances (e.g. the cartons, bread wrappers, etc. mentioned in the majority opinion) they produce no "waste" and thus cannot be "generators."

¶24. Third, we look to Miss. Code Ann. § 19-5-18 (1995), which pertains to the development of a system for billing and collecting. In pertinent part, section 19-5-18(1) reads:

To defray the cost of establishing, operating and maintaining the system provided for in Section 19-5-17, the board of supervisors may develop a system for the billing and/or collection of any fees or charges imposed on each person *furnished* garbage and/or rubbish collection and/or disposal service by the county....

(emphasis added).

¶25. The general definitions of "furnished" (provided, given, supplied) would not be applicable to Rogers and Laudermilk, who have never received garbage and/or rubbish collection and/or disposal service by the county.

¶26. A careful and well reasoned construction and application of the statutes regarding the payment of garbage collection fees, and whether they must be paid for services not received, cannot be properly made without further attention from the trial court. We could speculate at length about the reasons why so little testimony was presented, why so little attention was paid to the actual language of the various statutes, why no one bothered to present documentary evidence regarding the enactments of the Board of Supervisors. But that would be a futile exercise at this point. What is needed is a new trial at which all issues are fully addressed.

¶27. Mississippi's laws regarding collection and disposal of garbage and/or rubbish may be less than uniform, cohesive, and consistent, but this Court has had occasion in the past to construe less than perfect statutes. In *Roberts v. Mississippi Republican Party State Executive Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985) we said that "[s]tatutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." Quoting *Lamar County Sch. Bd. v. Saul,* 359 So. 2d 350, 353 (Miss. 1978), we stated that "[i]n construing statutes, all statutes *in pari materia* are taken into consideration, and a legislative intent deduced from a consideration as a whole."

¶28. This Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing relevant factors." *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (citing *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss. 1990)). In the present case, I have that conviction.

¶29. I would reverse the judgment of the Oktibbeha County Circuit Court and remand for proceedings consistent with this opinion, including but not limited to full consideration of the following questions: (1)

Were Rogers and Laudermilk "generators" of garbage and/or rubbish even if no solid waste remained after their lawful disposal on their own land? (2) Were Rogers and Laudermilk "furnished" garbage and/or rubbish collection and/or disposal service by the county, even though no collections were ever needed or made? (3)Was the stated Oktibbeha County policy of having no exemptions from monthly garbage collection fees the result of an official action of the board, reflected in its minutes, resolutions, or other official records, or simply an informal understanding?

1. 1996 amendments deleted "and/" throughout all the sections pertinent to garbage and rubbish disposal. However, for purposes of this opinion, we use the "and/or" language in existence at the time the Rogers and Laudermilk cases were filed initially.